IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EDWARD HOLMES, | ) |
| Plaintiff, | ) ) ) |
| | ) 02 C 7266 |
| v. | ) ) Magistrate Judge Brown |
| DR. KUL SOOD and WEXFORD HEALTH SOURCES, INC. | ) ) ) |
| Defendants. | ) ) |

**NOTICE OF FILING**

TO:

Mr. Michael Charysh
Charysh & Shroeder, Ltd.
33 North Dearborn Street
Suite 1300
Chicago, IL 60602

FILED
APR - 7 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Please take notice that on April 7, 2005 I filed the attached Response to Defendants' Statement of Material Facts at the United States Courthouse at 219 South Dearborn, Chicago, Illinois.

Arthur Loevy
Jon Loevy
Amanda Antholt
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Amanda Antholt, an attorney, certify that on April 7, 2005, I sent by hand delivery a copy of the attached Response to the above-named counsel of record.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EDWARD HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 7266 |
| ) | Magistrate Judge Geraldine Brown |
| DR. KUL SOOD and WEXFORD HEALTH, ) | |
| SOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

FILED
APR - 7 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS

NOW COMES Plaintiff, EDWARD HOLMES, by and through his attorneys, LOEVY & LOEVY, in opposition to Defendants' Motion for Summary Judgement and responding to Defendants' Statement of Facts:

### DESCRIPTION OF PARTIES

1. Plaintiff Edward Holmes was an inmate in the Will County Adult Detention Facility (WCADF) related to a drug possession offense in September of 2001. (Ex. A, Plaintiff's complaint)

**Admit.**

2. Defendant Wexford Health Sources contracted with the Will County Adult Detention Facility to provide medical care to the inmates. (Ex. A, Plaintiff's complaint)

**Admit.**

3. Dr. Kul Sood was the Medical Director for the Will County Adult Detention Facility on a contract basis with Wexford Health Sources. (Ex. F, Dr. Sood's deposition., vol. II, p. 28)

**Admit.**

### VENUE AND JURISDICTION

4. Plaintiff has brought Count I of this action pursuant to 42 U.S.C. Sec. 1983, therefore this Court has jurisdiction pursuant to 28 U.S.C.§1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.§1367.

**Admit.**

5. Venue is proper under 28 U.S.C.§1391(b) as all parties reside in the district and all events alleged to have occurred, occurred in the district.

**Admit.**

## STATEMENT OF UNCONTESTED MATERIAL FACTS

6. Plaintiff was an inmate at the Will County Adult Detention Facility (WCADF) from September 13, 2001 through October 12, 2001. (Ex. B, Plaintiff's deposition, p. 41)

**Admit.**

7. On September 13, 2001, Plaintiff told Wexford employees that he had chronic pain, just had his colostomy reversed, and his stomach hurt. (Ex. B, Plaintiff's deposition, p. 91)

**Admit.**

8. When plaintiff entered WCADF on September 13, 2001, his abdomen was distended and he provided a history of abdominal distention for years. That is why he claimed he was taking pain medication. (Ex. B, Plaintiff's deposition, p. 91)

**Admit that Plaintiff's abdomen was slightly, but not visibly, distended and that he had a history of abdominal distention for years. See Exhibit K (Marilyn Holmes) at 23, 38-40. Plaintiff denies that abdominal distention is the reason why he was prescribed pain medication and states that he was prescribed pain medication for chronic pain relating to his abdominal condition, orthopedic condition, arthritis and hip replacement surgery. See Exhibit A (Holmes Dep.) at 35, 99; Exhibit B (Sood Dep.) at 46; Exhibit F (Franklin Dep.) at 67-68.**

9. Prior to September, 2001 plaintiff was seen by Dr. Darbandi on July 28, 2001 when the doctor found he had a mildly distended abdomen with no guarding or rebounding. The significance of no guarding or rebounding is that it doesn't need to be operated on right away. (Ex. C, Dr. Darbandi's deposition, p. 32)

**Plaintiff objects to this statement on the grounds that it fails to properly cite to supporting evidence. Plaintiff admits that he was seen by Dr. Darbandi on July 28, 2001 and the doctor found that he had a mildly distended abdomen with no guarding and**

2

**rebounding. Plaintiff denies the remaining portion of the statement. See Exhibit J (Darbandi Dep.) at 33, 35-36 (mild guarding and no rebound but still need for surgical intervention); Exhibit F (Franklin Dep.) at 83-84 (explaining guarding/rebound as signs of the patients' subjective pain resulting from touch). For example, on October 14, 2001, Dr. Darbandi found that Mr. Holmes was at risk of perforation and surgery was necessary or Mr. Holmes could lose his life; however, in terms of Mr. Holmes' symptoms, he found that he had mild guarding and no rebound. See Exhibit J (Darbandi Dep.) at 33, 35-36.**

10. Dr. Darbandi saw plaintiff at Silver Cross Hospital on October 16, 2001. When he first saw the plaintiff he doubted whether the plaintiff needed surgery at the time. (Ex. C, Dr. Darbandi's deposition, p. 40)

**Deny. See Exhibit J (Darbandi Dep.) at 38-40 (Darbandi saw Plaintiff on October 14, 2001), 40-41 (he was not sure if plaintiff needed surgery at noon, but was sure a few hours later), and 56 (surgery was necessary on October 14, 2001).**

11. Dr. Darbandi does not believe the plaintiff had a mechanical obstruction of the bowel in October of 2001. (Ex. C, Dr. Darbandi's deposition, p. 42)

**Admit.**

12. Prior to September 2001 Plaintiff had chronic abdominal distention caused by drug use. (Ex. C, Dr. Darbandi's deposition, p. 52)

**Deny. See Exhibit J (Darbandi Dep.) at 52-56 (repeatedly stating that narcotic use, including prescription narcotic pain relievers "could" be one "contributing factor").**

13. Plaintiff's expert Dr. James Franklin, testified that in his opinion, no one at the WCADF was trying to hurt the plaintiff, they were trying to treat his symptoms, and in fact they were providing what they thought was appropriate medical attention. (Ex. D, Dr. Franklin's deposition, p. 59-60)

**Plaintiff objects to this statement as mischaracterizing the record. With regard to the first statement, Plaintiff denies that Dr. Franklin testified that no one at WCADF was**

3

**trying to hurt the plaintiff. See Exhibit F (Franklin Dep.) at 59. Plaintiff admits that Dr. Franklin testified that whether the health care service providers were seeking to intentionally injure Mr. Holmes was not a topic on which he was rendering an opinion. Id. Plaintiff admits the remaining portion of this statement with the clarification that Dr. Franklin testified that they were treating Mr. Holmes symptomatically (with pain relievers) without any attempt to evaluate the symptoms. Id. at 59. Finally, while Plaintiff admits Dr. Franklin's testimony, Plaintiff denies the truth of these statements. See Exhibit A (Holmes Dep.) at 94, 95, 111, 118, 126-28, 132, 146, 155, 206-209; Exhibit B (Sood Dep.) at 106; and Exhibit D (Sterr Dep.) at 5-10.**

14. It was further Dr. Franklin's belief that based upon the medical records plaintiff was provided with some type of care and treatment while in the jail. (Ex. D, Dr. Franklin's deposition, p. 60)

**Deny. See Exhibit F (Franklin Dep.) at 60-61. The cited testimony states that the only thing the medical staff did right was to physically examine Mr. Holmes. Id.**

15. Dr. Franklin's complaint related to the treatment was that it was not "particularly appropriate." (Ex. D, Dr. Franklin's deposition, p. 61)

**Deny. See Exhibit F (Franklin Dep.) at 61 (in response to the question asking whether the medical staff did anything right besides the physical examination, Dr. Franklin stated, "No ... Not — I don't think it was particularly appropriate." Dr. Franklin critiqued the treatment, or failure to provide treatment at length in his reports and testimony. See Exhibit G (reports) and F (Franklin Dep.) at 59, 96-99, 109-111, 128-132, 147-153.**

16. Dr. Franklin testified Dr. Sood properly performed a complete physical on the plaintiff on September 17, 2001. (Ex. D, Dr. Franklin's deposition, p. 82)

**Admit.**

4

17. Dr. Franklin testified Dr. Sood appropriately performed an abdominal examination on September 17, 2001. (Ex. D, Dr. Franklin's deposition, p. 84)

**Deny. See Exhibit F (Franklin Dep.) at 84. Dr. Franklin did not testify that Dr. Sood appropriately performed the abdominal examination, but that it was appropriate for Dr. Sood to perform an examination of the abdomen. Id. Dr. Franklin also testified that because Dr. Sood was not able to properly examine the abdomen by touch due to the distention, diagnostic studies, such as an x-ray, were necessary. Id. at 109, 148, 149-50.**

18. Dr. Franklin could not testify that when Plaintiff presented to Silver Cross Hospital upon being released from the WCADF he had an acute surgical abdomen. (Ex. D, Dr. Franklin's deposition, p. 94-95)

**Deny. Dr. Franklin testified that Mr. Holmes may have had an acute surgical abdomen, but he did not know. See Exhibit F (Franklin Dep.) at 94. Plaintiff clarifies that it was impossible to know if Plaintiff had an acute surgical abdomen when he was released from WCADF because no diagnostic studies had yet been performed. See Exhibit F (Franklin Dep.) at 153; Exhibit H (Himmelman Dep.) at 96.**

19. Plaintiff was admitted to Silver Cross Hospital on October 12, 2001 with abdominal distention and did not have his first abdominal x-ray until October 13, 2001. (Ex. D, Dr. Franklin's deposition, p. 96)

**Admit.**

20. Dr. Franklin believes Dr. Sood made a mistake in the treatment he provided plaintiff. (Ex. D, Dr. Franklin's deposition, p. 97)

**Admit.**

21. Dr. Franklin's opinions are limited to Dr. Sood. (Ex. D, Dr. Franklin's deposition, p. 98)

**Admit.**

5

22. Dr. Franklin also testified that plaintiff did not have a mechanical obstruction of the bowel while an inmate from September through October 2001. (Ex. D, Dr. Franklin's deposition, p. 99)

**Admit with the clarification that Dr. Sood could not have known that Plaintiff did not have a mechanical bowel obstruction, or the condition of Mr. Holmes' bowels, without diagnostic tests. See Exhibit F (Franklin Dep.) at 99, 149-50. In light of Mr. Holmes' symptoms while he was in Dr. Sood's care, mechanical bowel obstruction would have been part of his differential diagnosis in September and October 2001. Id.; Exhibit B (Sood Dep.) at 174; Exhibit C (Sood Dep. Vol. 1) at 119. In hindsight, after the surgery, Plaintiff did not have a mechanical obstruction, rather he had a pseudo obstruction. See Exhibit F (Franklin Dep.) at 99.**

23. Dr. Franklin's sole criticism of Dr. Sood's treatment was that plaintiff should have been referred out for an obstructive series of x-rays or other diagnostic studies. (Ex. D, Dr. Franklin's deposition, p. 97, 132)

**Deny. See Exhibit G (Reports) and F (Franklin Dep.) at 59, 96-99, 109, 128-132, 147-153. Dr. Franklin testified that without being able to conduct a physical examination of Plaintiff's abdomen it was necessary to obtain x-rays or other diagnostic studies in order to examine the organs and determine the course of treatment to respond to the condition. See (Franklin Dep.) at 97, 132, 149-50. Dr. Franklin testified that Plaintiff should have received conservative treatments to relieve the dilation of his colon. Id. at 132-33; see also Exhibit H (May 14, 2004 report describing necessary treatments). Such treatment could have included: treatment to correct his malnutrition, dehydration, electrolyte imbalance, and potassium deficiency, intravenous fluids, nasogastric decompression, withdrawal of narcotic medication, use of a rectal tube, small tap water enemas, and/or colonscopic intervention. See Exhibit G (May 14, 2004 report) and F (Franklin Dep.) at 132-35, 137.**

6

24. Dr. Franklin testified that Dr. Sood attributed plaintiff's complaints to his past medical condition and did not feel any further studies were warranted. (Ex. D, Dr. Franklin's deposition, p. 150)

**Admit that Dr. Franklin testified that Dr. Sood had stated in deposition that he attributed the complaints to Mr. Holmes' past medical condition and that he did not feel any further studies were warranted.**

25. Dr. Robert Himmelman is also an expert presented by the plaintiff. (Ex. E, Dr. Himmelman's deposition, p. 15)

**Admit.**

26. Dr. Himmelman reviewed records in this case and rendered opinions claiming Dr. Sood's treatment fell below the standard of care. The standard of care he was referring to was what any reasonable physician would have done in similar circumstances. (Ex. E, Dr. Himmelman's deposition, p. 65,67)

**Deny as an incomplete and inaccurate description of Dr. Himmelman's definition of standard of care. See Exhibit H (Himmelman Dep.) at 66-67.**

27. Dr. Himmelman does not believe anyone at WCADF tried to intentionally harm plaintiff. (Ex. E, Dr. Himmelman's deposition, p. 70)

**Admit that Dr. Himmelman answered "no" to the question, "Now it is not your opinion that Dr. Sood or anyone at the Will County Adult Detention Facility tried to intentionally harm Mr. Holmes, is it? See Exhibit H (Himmelman Dep.) at 70. Dr. Himmelman further testified that he did not know Dr. Sood's reasoning. Id. at 71. Finally, while Plaintiff admits Himmelman's testimony, Plaintiff denies the truth of the statement. See Exhibit A (Holmes Dep.) at 94, 95, 111, 118, 126-28, 132, 146, 155, 206-209; Exhibit B (Sood Dep.) at 106; and Exhibit D (Sterr Dep.) at 5-10.**

28. Dr. Himmelman testified that Dr. Sood did provide plaintiff with some medical care while he was in the WCADF. (Ex. E, Dr. Himmleman's deposition, p. 70)

**Admit.**

7

29. Dr. Himmelman is critical of the type of treatment rendered to plaintiff. (Ex. E, Dr. Himmelman's deposition, p. 71)

**Admit.**

30. Dr. Himmelman would have rendered different treatment to plaintiff. (Ex. E, Dr. Himmleman's deposition, p. 71)

**Admit.**

31. Dr. Himmelman testified that there is no evidence that plaintiff was blocked from receiving medical treatment or that he was refused medical treatment. (Ex. E, Dr. Himmelman's deposition, p. 72)

**Deny that Dr. Himmelman testified that there was *no evidence* that plaintiff was blocked from receiving medical treatment and that plaintiff was refused medical treatment. See Exhibit H (Himmelman Dep.) at 72 and 124-27. Admit that Dr. Himmelman answered "no" to the question "is there any *evidence that you have reviewed* that . . . Dr. Sood intentionally blocked *medical treatment suggested by someone else.*" Id. (emphasis added). Plaintiff further denies the truth this statement. See Exhibit A (Holmes Dep.) at 94, 95, 111, 118, 126-28, 132, 146, 155, 206-209; Exhibit B (Sood Dep.) at 106; Exhibit D (Sterr Dep.) at 5-10; and Exhibit N (Keenan Affidavit).**

32. When the plaintiff entered WCADF on September 13, 2001, Dr. Himmelman testified that plaintiff had some distention in his abdomen chronically. (Ex. E, Dr. Himmelman's deposition, p. 102)

**Admit.**

33. On September 17, 2001 the plaintiff did not have an acutely surgical abdomen and between September 17, 2001 and September 26, 2001 the plaintiff apparently improved. (Ex. E, Dr. Himmelman's deposition, p. 105)

**Admit that Plaintiff did not have an acutely surgical abdomen on September 17, 2001. Deny that Plaintiff improved between September 17, 2001 and September 26, 2001. See Exhibit A (Holmes Dep.) at 126-27, 131-32; Exhibit D (Sterr Dep.) at 21; Exhibit F**

8

(Franklin Dep.) at 96; Exhibit X (Marilyn Holmes Dep.) at 40. The cited testimony is in reference to the information provided on Dr. Sood's own Medical Progress Notes. See Exhibit H (Himmelman Dep.) at 84, 105. Further, Dr. Himmelman testified that it was "incongruent for him to say [Mr. Holmes] is not in distress and then gave him Tylenol 3 for pain." See Exhibit H (Himmelman Dep.) at 84-85. As Dr. Franklin clarified in response to this exact issue, what the notes actually show is that Mr. Holmes demonstrated different symptoms to Dr. Sood on the two dates and times, not that Mr. Holmes actually improved. See Exhibit F (Franklin Dep.) at 85-85; Exhibit H (Himmelman Dep.) at 82.

34. Dr. Himmelman believed Dr. Sood should have sent plaintiff to have an obstructive series of x-rays and other diagnostic tests done by September 17, 2001. (Ex. E, Dr. Himmelman's deposition, p. 103)

**Admit.**

35. Wexford does not give Dr. Sood any direction regarding how often to see a patient or when to send them out for additional tests, he makes his own protocol. (Ex. F, Dr. Sood's deposition, vol. II, p. 92)

**Deny.** See Exhibit B (Sood Dep.) at 150; Exhibit R (Wexford's Responses to the First Set of Requests to Admit, Nos. 5, 6); Exhibit T (Wexford's Responses to the Second Set of Requests to Admit, Nos. 24, 25; Exhibit S (Sood's Interrogatory Responses Nos. 5, 9, 10. 11, 13); Exhibit V (cover pages and indexes to voluminous policy and practice manuals); Exhibit W (policy).

36. Dr. Sood is an independent contractor for Wexford. (Ex. F, Dr. Sood's deposition, vol. II, p. 147).

**Deny.** See Plaintiff's Response to Defendant's Motion for Summary Judgment at 21-23 (and supporting evidence cited therein). Plaintiff admits that Wexford calls Dr. Sood an independent contractor but deny that he is as a matter of law.

9

37. When plaintiff entered WCADF Dr. Sood authorized the continuation of vicoprofen which was prescribed by plaintiff's outside doctor as a pain reliever. (Ex. F, Dr. Sood's deposition, vol. II, p. 38)

**Admit.**

38. Plaintiff was seen by medical personnel at WCADF on September 14, 2001 and he complained of chest pain, his abdomen was distended with pain of unknown etiology. (Ex. F, Dr. Sood's deposition, vol. II, p. 40)

**Admit.**

39. On September 14, 2001 plaintiff was seen by Dr. Sood. Plaintiff complained of chronic pain, hip and abdominal. He further reported bowel carcinoma with multiple surgeries, he had a good bowel movement and was passing gas. His abdomen was reported as distended and he had good bowel sounds. (Ex. F, Dr. Sood's deposition, vol. II, p. 46)

**Plaintiff admits that he was seen by Dr. Sood on September 14, 2001 and that the that medical progress notes for September 14, 2001 include the statements described, as well as indicate intestinal pain. See Exhibit B (Sood Dep.) at 46. Plaintiff denies to the extent that the statement infers he did not complain of pain beyond his chronic pain. See Exhibit A (Holmes Dep.) at 51-53.**

40. As a result of his September 14, 2001 examination of the plaintiff, Dr. Sood prescribed "continue present management." (Ex. F, Dr. Sood's deposition, vol. II, p. 47)

**Admit.**

41. On September 15, 2001 Dr. Sood prescribed vicoporofen to plaintiff for pain. (Ex. F, Dr. Sood's deposition, vol. II, p. 123)

**Admit.**

42. On September 16, 2001 plaintiff complained of fistula in his rectum, this is a chronic condition. He also complained of a history of intestinal carcinoma and constipation. There is a standard protocol used by the nurses for complaints of constipation, wherein the inmate is given milk of magnesia. (Ex. F, Dr. Sood's deposition, vol. II, pp 53-54)

**Deny that Plaintiff complained of carcinoma on September 16, 2001. Plaintiff submitted a written medical service complaining of vomiting, constipation and a "rectum**

10

**problem" on September 16, 2001. See Exhibit A (Holmes Dep.) at 123-24; Exhibit B (Sood Dep.) at 49, 56. Plaintiff admits the remaining portions of this statement, including that he informed the nurse of the fistula and that he had some bleeding in his rectum, as well as that there is a protocol for nurses to give milk of magnesia to patients with complaints of constipation. Id.; Exhibit C (Sood Dep. Vol. 1) at 153-54. Plaintiff denies that this protocol was the only form of treatment that should have been provided to persons with a history of colostomy and symptoms including vomiting, abdominal distention, pain, rectal bleeding, and constipation. Exhibit B (Sood Dep.) at 120-21, 174 and C (Sood Dep. Vol. 1) at 119.**

43. On September 17, 2001 Dr. Sood gave plaintiff a physical. Dr. Sood noted in the report of the physical that plaintiff's abdomen was abnormal, there was diffuse tenderness, masses and questionable to evaluate due to distention. (Ex. F, Dr. Sood's deposition, vol. II, p. 65)

**Deny in that the statement inaccurately reflects Dr. Sood's testimony of his findings on September 17, 2001 regarding masses. See Exhibit B (Sood Dep.) at 65. Dr. Sood found "masses, questionable to evaluate." The testimony as stated in the record indicates that Dr. Sood was unable to palpate Mr. Holmes' intestinal tract for masses or enlargements. Admit remaining portions of this statement.**

44. On September 17, 2001, Dr. Sood prescribed Zantac for abdominal discomfort and Colace. (Ex. F, Dr. Sood's deposition, vol. II, p. 126)

**Admit.**

45. On September 26, 2001 Dr. Sood made a note in plaintiff's record that he complained of abdominal pain, he denied constipation and had a normal bowel movement. (Ex. F, Dr. Sood's deposition, vol. II, p. 78)

**Deny. See Exhibit B (Sood Dep.) at 77-78. Nurse Keenan (not Dr. Sood) made a note in Plaintiff's chart that he complained of abdominal pain, denied constipation and had a normal bowel movement on September 26, 2001. Id.; Exhibit X (Keenan affidavit).**

11

46. Upon examination of plaintiff on September 26, 2001 plaintiff was found to be in no acute distress, vitals were stable, his abdomen was distended, bowel sounds were active, there was no guarding or rebound. (Ex. F, Dr. Sood's deposition, vol. II, p. 79)

**Plaintiff admits that Dr. Sood testified, with reference to Plaintiff's chart, that on September 26, 2001 he made the stated findings. See Exhibit B (Sood Dep.) at 79. Plaintiff denies that Dr. Sood's notes, referenced in the testimony, state that there was no acute distress. See Exhibit M (progress notes, page number W001025); Exhibit F (Franklin Dep.) at 71-72. Plaintiff denies that he was not in acute distress. See Exhibit A (Holmes Dep.) at 51-53, 126-31; Exhibit N (Keenan affidavit); See Exhibit B (Sood Dep.) at 79 (prescribed Tylenol 3); Exhibit H (Himmelman Dep.) at 84-85 ( "incongruent" to note no acute distress and prescribe Tylenol 3 for pain).**

47. He prescribed medication at the time for pain, because plaintiff's outside doctor was out of town. (Ex. F, Dr. Sood's deposition, vol. II, p. 83)

**Admit.**

48. From the September 26, 2001 examination Dr. Sood determined that plaintiff was stable, and his condition was not worsening. (Ex. F, Dr. Sood's deposition, vol. II, p. 84)

**Deny. See Exhibit B (Sood Dep.) at 77-83; Exhibit H (Himmelman Dep.) at 84-85 (prescription shows he found Holmes to be in abnormal pain); Exhibit A (Holmes Dep.) at 51-53, 126-31.**

49. On September 30, 2001 plaintiff refused to take Colace which is a stool softener. (Ex. F, Dr. Sood's deposition, vol. II, p. 182)

**Admit. On September 30, 2001, Plaintiff refused to take the stool softener because it was causing him to vomit. See Exhibit A (Holmes Dep.) at 148.**

50. The last time plaintiff received medical care at WCADF prior to his release was on October 11, 2001. Plaintiff complained of soft bowel movement and denied constipation, his abdomen was reported as hard. His bowel sounds were low, he complained of abdominal pains

12

and vomiting. This showed plaintiff had a chronic abdominal problem. (Ex. F, Dr. Sood's deposition, vol. II, p. 86-88)

**Deny. Plaintiff states that he was seen by Wexford medical staff on October 11 and 12, 2001. Plaintiff admits that he was not provided with any medical treatment on October 11 or 12, 2001. Plaintiff denies that he was not constipated on October 11, 2001. See Holmes Dep. at 116-119. Plaintiff admits that the October 11, 2001 Medical Progress Note states that he denied constipation on that date and that he had soft bowel movement, hard abdomen, low bowel sounds in all four quadrants, abdominal pain, and vomiting. Plaintiff denies that "this showed plaintiff had a chronic abdominal problem." See Exhibit F (Franklin Dep.) at 147-48; Exhibit G (Franklin Reports), Exhibit I (Himmelman Report); Exhibit B (Sood) at 120-21, 174, 202-203. An acute process had superceded his chronic condition. Id.; see also Exhibit A (Holmes Dep.) at 116-119 (describing condition); Exhibit B (Sood) at 202-203 (chronic condition does not refute acute onset).**

51. The symptoms seen on October 11, 2001 showed the plaintiff was in abdominal distress. He was not concerned with the abdominal distress because that was plaintiff's history. (Ex. F, Dr. Sood's deposition, vol. II, p. 93-94)

**Admit that Plaintiff was in abdominal distress on October 11, 2001. Plaintiff denies that this level of abdominal distress was part of his history. Plaintiff admits that Dr. Sood was not concerned about his abdominal distress. See Exhibits F (Franklin Dep.) at 147-48; Exhibit G (Franklin reports), Exhibit I (Himmelman reports). Plaintiff states that an acute process had superceded his chronic condition. Id.; see also Exhibit A (Holmes Dep.) at 116-119 (describing condition); Exhibit B (Sood) at 39 (acute pain), 202-203 (chronic condition does not refute acute onset).**

13

52. On October 11, 2001 plaintiff was given a cup to obtain a stool sample to determine if there was blood in his stool. This showed that there was no blood in his stool. (Ex. F, Dr. Sood's deposition, vol. II, p. 110-112)

**Admit.**

53. On October 12, 2001, Dr. Sood prescribed Kaopectate to the plaintiff for relief of diarrhea. (Ex. F, Dr. Sood's deposition, vol. II, p. 106)

**Admit that Dr. Sood prescribed Kaopectate on October 12, 2001 for diarrhea. Deny that Dr. Sood expected the Kaopectate to relieve Mr. Holmes' diarrhea, which was one of several symptoms of a more severe condition. See Exhibits G (Franklin reports) and I (Himmelman report), and C (Sood Dep. Vol. 1) at 119 (admitting knowledge that symptoms, including diarrhea, indicated more severe problem).**

54. When making decisions about how to treat patients Dr. Sood must make a clinical judgment. (Ex. F, Dr. Sood's deposition, vol. II, p. 157)

**Admit.**

55. Dr. Sood did not order an abdominal x-ray because of plaintiff's chronic condition in relation to his abdomen and multiple surgeries. (Ex. F, Dr. Sood's deposition, vol. II, p. 198)

**Deny. See Exhibit B (Sood) at 39 (acute pain), 202-203 (chronic condition does not refute acute onset) and Exhibit C (Sood Dep. Vol. 1) at 119 (admitting knowledge that symptoms, including diarrhea, indicated more severe problem). See also Exhibit F (Franklin Dep.) at 147-48; Exhibit I (Himmelman report).**

56. Dr. Sood did not refer plaintiff to an outside facility because of his previous medical history of chronic abdominal condition and his clinical judgment. (Ex. F, Dr. Sood's deposition, vol. II, p. 202)

**Deny. See Exhibit B (Sood) at 39, 120, 202-203 and Exhibit C (Sood Dep. Vol. 1) at 119. See also Exhibit F (Franklin Dep.) at 147-48; Exhibit H (Himmelman Dep.) at 82.**

14

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Amanda Antholt
Arthur Loevy
Jon Loevy
Jon Rosenblatt
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312)243-5900