IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 02 C 7266 |
| v. | ) | |
| | ) | Magistrate Judge Brown |
| DR. KUL SOOD, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S SIXTH MOTION *IN LIMINE* TO BAR
## REFERENCE TO THE LENGTH OR DETAILS OF MR. HOLMES' SENTENCE

NOW COMES Plaintiff, EDWARD HOLMES, by his attorneys, LOEVY & LOEVY,

respectfully moves this Honorable Court to enter an order barring reference to the length of

details of Mr. Holmes' sentence. In support, Plaintiff states as follows:

As discussed in Plaintiff's first motion *in limine*, by the very nature of this case, the jury

will know that Plaintiff had been convicted of a crime and was incarcerated during the events at

issue. The jury need not know, however, any other facts regarding the conviction. Amongst

those facts is the length of the sentence and evidence of the length of the sentence should be

barred pursuant to Plaintiff first motion *in limine*. Plaintiff brings this separate motion *in limine*

because evidence of the length of Plaintiff's sentence, in particular, is likely to cause jury

confusion and engender unfair prejudice. This is due to the original posture of his sentencing as

well as the fact that the judge cut his sentence short when he ordered his release on October 12,

2001.

On September 13, 2001, the Will County Circuit Court sentenced Plaintiff to three years

for a possession offense that he was arrested for in March 2001. *See* Exhibit A (9/13/01 Hearing

Transcript) at 16. However, both prior to and after pronouncing the sentence, the court spoke of

the fact that it was considering a shorter sentence, on the order of two months confinement

followed by a residential drug treatment program. *Id.* Indeed, the last thing the judge said to Mr.

Holmes at the sentencing hearing indicated that he was imposing the sentence only temporarily

while he continued to consider it and that he did not intend it to be his final pronouncement:

> Now, Mr. Holmes, I still have one more date to reconsider what I just did. And
> your attorney just picked the date. So I may end up changing my mind depending
> upon what he puts in that motion. That's always a possibility. But if we are going
> to do treatment, we are going to do it my way.

*Id.* at 18.

On October 11, 2001, the Court held another hearing on the sentencing issue and

considered whether Plaintiff should be released from jail and placed into a residential treatment

program. *See* Exhibit B (10/11/01 Transcript). The court concluded that hearing as follows:

> I tell you what. I will take the matter under advisement further. You come back
> with a report that tells me whether they will take him (sic) residentially extended
> period of time. I am not talking about two weeks and he is out again. I want three
> to six months minimum, and if they will do that, I will further consider my
> alternatives here.

*Id.* at 7. Finally, on October 12, 2001, after social worker Julie Sterr pleaded with the judge to

release Mr. Holmes because the jail was refusing to care for his colon condition, the judge

sentenced him to time served and 6 months probation. *See* Exhibit C (court docket).

Thus, the three year sentence is not a fair reflection of the court's view of the seriousness

of the offense nor of the retribution due Mr. Holmes, and if Defendant tried to suggest that the

length of the sentence was relevant that would be an unfair mischaracterization. However, it is

impossible to convey this to the jury without going into complicated explanations of sentencing

2

procedures and, more importantly, without unraveling the motion *in limine* on substance abuse. Plaintiff should not be forced into such a position on an issue with no or little relevance to the case. *See Eastern Natural Gas Corp. v. Aluminum Co. of America*, 126 F.3d 996 (7th Cir. 1997) (trial court properly prohibited introduction of withdrawn legal pleadings due to risk of jury confusion); *United States v. LeFevour*, 798 F.2d 977 (7th Cir. 1986) (in judicial corruption case, trial court properly refused evidence of other instances where judge dismissed tickets because of risk of jury confusion).

## Conclusion

The only relevant facts about Plaintiff's sentence is that he was sentenced on September 13, 2001 and that the judge ordered Plaintiff released and put on probation on October 12, 2001. Nothing else is relevant to Plaintiff's medical treatment while in jail, and anything more is potentially unfairly prejudicial and runs a serious risk of confusing the jury as to the court's actual adjudicative processes. Moreover, it would force Plaintiff to open up the area of substance abuse, which he should not have to do. Accordingly, the Court should bar evidence on the length or other details of Plaintiff's sentence.

## Local Rule 37.2 Statement

Prior to filing this motion, Plaintiff's counsel disclosed the motion to defense counsel, along with a short description of what specifically Plaintiff sought to bar and why. On March 21, 2006 at 3:30 p.m. at the location of the law offices of Charysh & Shroeder, Plaintiff's counsel, Michael Kanovitz and Amanda Antholt, met with Defendant's counsel, Michael Charysh and Richard A. Tjepkema, to discuss this motion. Unfortunately, after good faith attempts to resolve this issue, the parties were unable to reach an accord.

3

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiff

Arthur Loevy
Michael Kanovitz
Amanda Antholt
LOEVY & LOEVY
312 North May Street, Ste. 100
Chicago, IL 60607
(312) 243-5900

4

```
 1              IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
                           WILL COUNTY, ILLINOIS
 2

 3   THE PEOPLE OF THE              )
     STATE OF ILLINOIS,             )
 4                                  )
                  Plaintiff,        )
 5                                  )
                  vs.               )    No. 01 CF 459
 6                                  )
     EDWARD HOLMS,                  )
 7                                  )
                  Defendant.        )
 8

 9

10           REPORT OF PROCEEDINGS of the hearing before the

11   Honorable Daniel J. Rozak, on the 13th day of September, 2001.

12

13           APPEARANCES:

14
             MR. FREDERICK HARVEY,
15           Assistant State's Attorney,
             appeared on behalf of the People;
16
             MR. JASON STRZLECKI,
17           Assistant Public Defender,
             appeared on behalf of the Defendant.
18

19

20   Annamarie Rimkevicius, CSR
     14 West Jefferson Street
21   Joliet, Illinois  60432

22

23

24
```



EXHIBIT
A

1

1          THE COURT: Edward Holms. 2001 CF 459.

2          MR. HARVEY:    Judge, up today for sentencing hearing.

3          MR. STRZLECKI:   That's correct. I also have before the

4     Court a Petition To Elect TASC Treatment.

5          THE COURT: Are you ready for sentencing?

6          MR. HARVEY: The State is ready.

7          THE RESPONDENT: We would ask that Mr. Holms undergo the

8     evaluation to see if he is in fact acceptable to TASC prior to

9     the actual sentencing hearing.

10         THE COURT: State?

11         MR. HARVEY: Judge, State will be announcing ready for

12    sentencing.

13         THE COURT:   Why are we waiting to the date of sentencing

14    to request a TASC evaluation?

15         MR. STRZLECKI:   Your Honor, actually the petition itself

16    was filed back on August 15th. I am not sure exactly why he was

17    scheduled for this date other than the fact that perhaps in

18    going through the computer, this date showed up and somehow

19    clerically it got scheduled for this particular date as a matter

20    of, hopefully, convenience.

21         MR. HARVEY: We did receive Mr. Strzlecki's motion back

22    on August 15th.

23         THE COURT: How many weeks? Eight? Four? For TASC?

24         MR. STRZLECKI:   I am not certain how long it normally

1    takes.

2         THE CLERK:  I think four to six weeks.

3         THE COURT:  So your client is a drug addict or, at least,

4    that's what it appears.

5         MR. STRZLECKI:  That's correct, your Honor.

6         THE COURT:  And if I were to send him for a urinalysis

7    right now he would most likely not pass, is that correct?

8         THE DEFENDANT:    Beg your pardon?

9         MR. STRZLECKI:  Your Honor, Mr. Holms does indicate that

10   although he does have some drugs in his system at this time,

11   they are, in fact, prescription drugs.  And he is --

12        THE COURT:  Prescription for what?

13        THE DEFENDANT:  For Methadone.

14        THE COURT:  Methadone?

15        THE DEFENDANT:  Yes, sir.  And Bakprofine.

16        THE COURT:  What?

17        THE DEFENDANT:  Bakprofine.

18             I cannot think of the name.  I did not write it

19   down.

20        THE COURT:   What is the nature of your Social Security

21   Disability?

22        THE DEFENDANT:   I get SSI.

23        THE COURT:  Pardon?

24        THE DEFENDANT:  I receive SSI.

1          What is the nature of it?

2          THE COURT: Yes.

3          THE DEFNDANT:    Would you explain to me the nature?

4          THE COURT: Why are you getting SSI?

5          THE DEFENDANT: My illness: My bones and stuff are

6     deteriorating in my body, sir.

7          THE COURT: From all the cocaine or whatever he is, you

8     are talking?

9          THE DEFENDANT: I guess from my health because I have

10    false hips.

11         THE COURT: Pardon?

12         THE DEFENDANT: I have false hips. You know, they got

13    all kind of surgery, your Honor. Bowels, colostomy, and all. I

14    come from -- it is just illness.

15         MR. HARVEY: The PSI, the only mention of the illness

16    just in the reading off of Section Fifteen, it just says that

17    he has pretty poor health. He had a quote from the Defendant,

18    he had a hip replacement and seven months ago had rectum

19    surgery.

20         THE DEFENDANT: Colostomy bag. (Showing all of his

21    scars on his stomach)

22         THE COURT: Well, I am looking at page 8 of the Pre

23    Sentence Report. And it says that you went to South Suburban

24    Council on alcoholism and substance abuse, Men's Residential

1    Program. Was successfully discharged in May of 1998.

2    Apparently, not as successfully as they thought because he is

3    back here today.

4              So he has done the residential. And he entered

5    Provena Saint Joe's Medical Center Outpatient in '98. And no

6    incident of relapse. Apparently, they were mistaken. And then

7    prior to all of this, he was in Christ Hospital Detox Program

8    for two and a half weeks. They don't say what the result of

9    that was; but, apparently, not successful either.

10             So what we want to do, I guess, then is try this

11   one more time in spite of the fact that nothing ever worked in

12   the past.

13   MR. STRZLECKI: Your Honor, what I would suggest is TASC

14   is known to be a much more stringent program than some of the

15   programs that he has already been through. I think we all know

16   that TASC is a very difficult type of probation for somebody to

17   complete successfully. But it has been known to be more

18   effective than some of the others. Some of the over programs

19   that one might enter into voluntarily.

20             So it is our hope that in fact this will prove to

21   be the case for Mr. Holms.

22   THE COURT: When is the last time he has had any dope?

23   Street dope, not any prescription.

24   THE DEFENDANT: Beg your pardon?

5

1          THE COURT:  Pardon?

2          THE DEFENDANT:  What did you say now?

3          THE COURT:  When is the last time you had a shot of

4   heroin or a snort of cocaine?

5          THE DEFENDANT:  I don't shoot cocaine.  I --

6          THE COURT:  When is the last time you had any heroin or

7   cocaine?

8          THE DEFENDANT:  I ain't have no heroine in, day before

9   a month.

10         THE COURT:  Three or four months?

11         THE DEFNDANT:  Three or four years.

12         THE COURT:  Three or four years?

13         THE DEFENDANT:  Heroin.

14         THE COURT:  How about cocaine?

15         THE DEFENDANT:  I had some cocaine.

16         THE COURT:  When was the last time?

17         THE DEFENDANT:  About two days ago.

18         THE COURT:  Pardon?

19         THE DEFENDANT:  About two days ago.

20         THE COURT:  Two days ago.  Okay.

21              When is the last time you were hospitalized for

22   anything?

23         THE DEFENDANT:  For my hip.  I just got out.  My

24   bowels were blocked on me like last month.  Last month.

1          THE COURT:  Other than your prescription medication, what
2    unique medical care are you under right now?
3          THE DEFENDANT:    They got me on a machine for my, for
4    my bones, you know, to help pains in my bones.
5          THE COURT:  What machine?  Who does?
6          THE DEFENDANT:  Saint Joe's.  Doctor Martel.
7          THE COURT:    How often do you go for there of?
8          THE DEFENDANT:  I got it at the house.  I have to keep
9    it.  I just did not have it on me today.  I wore it last time.
10         THE COURT:  What is the name of the machine?  You don't
11   know?
12         THE DEFENDANT:  I can't recall the name of it, sir.
13         THE COURT:  How big is it?
14         THE DEFENDANT:  I wear it on my side.  I got four
15   patches through it, you know.  It is an electric machine.  It is
16   shock wave, sending shock waves through your body.
17         THE COURT:  It is for pain?
18         THE DEFENDANT:    Yes, sir.  For pain.
19         THE COURT:  With all of these medical problems, is TASC
20   going to take him?  Because it sounds to me if it is anything,
21   it would be a residential program.
22         MR. STRZLECKI:  Your Honor, it may very well turn out
23   that he is recommended for an inpatient program.  And in fact,
24   it might be a rather lengthy stay, but we are hoping that would

1    be the most suitable course of action, hopefully the most
2    productive, and most helpful.

3            THE COURT:    And you really want to break this habit, is
4    that right, Mr. Holms?

5            THE DEFENDANT:    Yes, sir.  I went through, I went
6    through the treatment on my own.  I had a drinking problem.
7    That's where it started out I stopped drinking.

8            THE COURT:  The last person that came in -- I should not
9    say "the last one." A couple of weeks ago I think it was, came
10   in here, from all of these baloney reports from their treatment
11   through TASC, how they completed all of the residential and
12   outpatient.  They were doing all of the counseling.  Everything
13   was just hunky-dory.  I said, Fine.  Go get a urinalysis at the
14   time, come back in thirty minutes.  Guess what?  They didn't
15   pass.

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  So I -- it has been my observation that
18   usually those TASC residential programs are much more effective
19   when they are preceded by the Judge Rozak Dry Out Program before
20   you go to their residential program.  That usually means you go
21   to the County Jail where you cannot get anything for about two
22   months.  Then you go to the residential treat.  Much more
23   successful.  And if you want to beat this, to be perfectly
24   honest with you, that's what I was thinking.  I have done it

8

1    before.  That's the only way it has every worked before that I
2    have seen because I know what will happen.  You will go right
3    back out there and you will smoke a little dope tonight,
4    tomorrow or the day after.  Do not tell me "no" because you are
5    also telling me your an addict which means you cannot help
6    yourself.  You can say "no" all you want but when the urge hits
7    you, you will have to do it and you have no control over it.
8    The only way we can control it to do exactly what they did in
9    the Wolfman Movie.  That's to lock them up in the cell when the
10   full moon came out.  It didn't matter.  He was stuck.  And
11   that's what we have to do when your full moon comes out.  You
12   will be stuck.  And you are not going to be able to get at
13   anything.

14        THE DEFENDANT:    Your Honor.

15        THE COURT:  Otherwise, you really did not want to break
16   the habit.  By looking at your criminal record -- you have been
17   through the Department of Corrections how many times already?

18        MR. HARVEY: Four, Judge.

19        THE COURT: Four times.

20        THE DEFENDANT:  I have not been through the Department
21   of Corrections, no, sir.

22        MR. HARVEY: Three times.

23        THE COURT:   You sure have --

24        THE DEFENDANT:  No, sir.

1          THE COURT: One, two, three.

2          THE DEFENDANT: Sir, I have not been in the Department
3    of Corrections one time.

4          THE COURT: Never?

5          THE DEFENDANT: Once. With my wife. I went to the
6    Department of Corrections once.

7          THE COURT: One year, one year, one year, and three
8    years; but three separate arrests; all of which got you
9    Department of Corrections sentences. So the way I look at it,
10   those are three separate felonies which were preceded by yet
11   another felony so that's four prior felony dispositions. You
12   have gone to the Department of Corrections on three of them
13   albeit concurrent. And looking at this Pre Sentence Report,
14   here, it would seem that you maybe, maybe I am not sure yet, but
15   maybe subject to an extended term. That 1991 may get you an
16   extended term. The disposition was in November '91.

17         MR. HARVEY: It would.

18         THE COURT: You are subject to an extended term which
19   means six years in prison with that record. I would not be a
20   bit surprised. I do not want to prejudge your case because I
21   have not heard everything at sentencing yet but I would not be a
22   bit surprised if the State would ask for that six years and I
23   just may end up giving you six years or we could do a couple of
24   months in the County Jail. I would take a look at what TASC HAS

1     to say and then I will see if you end up on TASC Problem, which

2     may do you some good so I guess you have got a choice before

3     you: Sixty days or six years, maybe. Sound like a real easy

4     choice to me.

5           MR. STRZLECKI: Your Honor, I would like an opportunity

6     to speak with Mr. Holms just briefly.

7           THE COURT: Okay.

8           MR. STRZLECKI: Perhaps we will have some sort of an

9     agreement.

10         THE COURT: I will pass it for a little bit.

11              (Whereupon, proceedings were had in other causes.)

12         THE COURT: Edward Holms. 200a CF 459. Okay. Where are

13     we are at?

14         MR. STRZLECKI: Your Honor, I have had an opportunity to

15     speak with Mr. Holms. And at this we are still seeking to have

16     Mr. Holms validated for T.A.S.C. Probation. I do understand the

17     Court's concern. And I understand that the Court has had

18     various experiences with people who have entered into the

19     T.A.S.C. Probation Program. I would suggest to the Court that a

20     period of being in custody, Will County Adult Detention

21     Facility, may not be the best approach for Mr. Holms. He

22     definitely does have a substance abuse problem and there is some

23     concern that that will continue to go on during any time which

24     he might be waiting to be allowed into TASC. However, Mr. Holms

1    does have a whole host of health problems. And his health
2    problems are certainly unique. There are, there is always, of
3    course, the argument that any health problems can be taken care
4    of adequately in the Will County Adult Detention Facility. The
5    argument is always made that they have adequate care and
6    adequate professionals to provide that care at the facility;
7    however, your Honor, it has been my experience that, maybe not a
8    direct experience but the word that I have received from many
9    individuals is that, in fact, proper care is not always given in
10   the Will County Adult Detention Facility. And somebody in Mr.
11   Holms' condition, I would suggest that it would be most
12   appropriate that he be allowed to continue to receive whatever
13   treatments are necessary from his own private personal
14   physician.

15           Again, I do understand the Court's position and the
16   Court's concern. Obviously, Mr. Holms has been through some
17   treatment programs in the past. And those apparently have not
18   been entirely successful despite the indications from those
19   facilities that they were successful. But nonetheless i do not
20   believe that that's any reason to give up hope on Mr. Holms.
21   And hope and we feel that this a period of T.A.S.C. Probation
22   might be the best remedy here. However, again, I would stress
23   that I don't believe that a period of incarceration in the Will
24   County Adult Detention Facility is in this case necessary or

12

```
 1    proper.
 2                    (Assistant State's Attorney Steven Platek steps
 3                         up.)
 4         THE COURT:   Okay.  Then we will proceed to sentencing.
 5    State have any modifications to the Pre Sentence Report?
 6         MR. PLATEK:  No, your Honor.
 7         THE COURT:   Defense have any modifications to the Pre
 8    Sentence Report?
 9         MR. STRZLECKI:   No, your Honor.
10         THE COURT:   Does the State have anything in aggravation
11    other than what is in the Pre Sentence Report?
12         MR. PLATEK:  No, your Honor.
13         THE COURT:   Does the Defense have any modifications to
14    the -- excuse me.  Any evidence in mitigation other than what is
15    in the Pre Sentence Report?
16         MR. STRZLECKI:   Nothing further, your Honor.
17         THE COURT:   Argument and recommendation by the State?
18         MR. PLATEK:   Your Honor, it appears from a Pre Sentence
19    Investigation that he has a drug problem that spans from the
20    late seventies until today.  And if he chooses to continue on
21    with this, I think that we are left with no other choice but to
22    sentence him to the Department of Corrections.  And if he wants
23    to spend a little time of his life, a little time drug free, in
24    the Department of Corrections, then that's what he is
```

1    essentially telling us. If we do not put him in the Department
2    of Corrections, he will remain on drugs. And I think that's the
3    only choice that we have is to put him in the Department of
4    Corrections. Nothing further.
5            THE COURT: Argument and recommendations by the Defense.
6            MR. STRZLECKI: Your Honor, I don't think that the State
7    can seriously be suggesting that time in the Department of
8    Corrections is some sort of cure-all for drug addiction,
9    especially drug addiction that has lasted this long. I think it
10   is certainly inappropriate to think that by putting Mr. Holms in
11   the Department of Corrections, that somehow he will come out not
12   <TPHAT>. This is somebody who needs treatment. We recommend
13   that he be allowed to under go the evaluation for TASC
14   Probation. We believe rehabilitation and cure of his drug
15   addiction is at that core of what is necessary here.
16           I ask your Honor to not be focused so much on the
17   punitive nature of Mr. Holm's sentence as the rehabilitative
18   nature of his sentence. This is an individual who is still a
19   worthwhile person, who has had a difficult time, who has had a
20   problem. He has obviously made attempts at treatment; and,
21   apparently, those attempts have failed. Whether or not that's
22   the fault of Mr. Holms, I think there is some doubt as to that.
23           Apparently, as I stated earlier, the places that he
24   has gone for treatment have indicated and suggested that in fact


14

1    they were under the impression he was cured; they had done their
2    job.  Apparently, they had not and Mr. Holms still has this
3    problem.  Nonetheless, as I stated earlier, that's no reason to
4    give up hope.  There is no reason to not seek additional
5    treatment.  This is by, I think everybody's account there is an
6    illness.  Certainly, Mr. Holms is not giving up on treatment for
7    his other illnesses, his other health-related problems.  And he
8    certainly does not want to give up hope incurring his other
9    health-related problem, that being his drug addiction.  And,
10   therefore, your Honor, we still suggest that in lieu of the time
11   in the Department of Corrections, that he be placed on, if not a
12   period of straight probation, that he be allowed to undergo an
13   evaluation for TASC.

14        MR. PLATEK:  Your Honor, just briefly.  When I respond,
15   I am not suggesting that the Department of Corrections is a
16   cure-all.  Obviously, it is not since he has been to the
17   Department of Corrections and he continues to have this problem.
18   What I am suggesting is that I would rather and I think we owe
19   it to him to ensure that he spends some time of his life drug
20   free and I am suggesting that the time in the Department of
21   Corrections drug fee is probably better or is better than being
22   on the streets and being on drugs.  The fact that he would have
23   to spend his time drug free in the Department of Corrections is
24   essentially a decision that he makes and that we owe it to him.

1          THE COURT: Okay. Anything else in his Defense?

2          MR. STRZLECKI: Nothing further.

3          THE COURT: Well, as an aggravating factor, he certainly

4    has a substantial prior record. So much so that he is still

5    eligible for an extended term. However, the one case that would

6    make him subject to that extended term is pretty close to the

7    period of being outside the ten years. It is not yet but we are

8    pretty close to it. So I think that is a mitigating factor. It

9    has been that long, that Class Two Felony.

10          Also, his medical condition is certainly a

11   mitigating factor to be taken into consideration. The fact that

12   he has gone through treatment before, several times, none of it,

13   absolutely none of it, has done him any good. And it puts me in

14   a dilemma. I do not know what to do. I would like to help Mr.

15   Holms, but I think that there is only one way to do that.

16          And he does not seem to be willing. That leaves me

17   with very little in the alternative, considering his prior

18   record. So I am going to sentence him to three years in the

19   Illinois Department of Corrections. Credit for how many days

20   served?

21          MR. PLATEK: Your Honor, he posted bond. He was picked

22   up March 19th. I think he posted bond the next day, two days.

23          THE COURT: Two dates credit.

24          Now, sir, you still have a right to appeal. If you

1    wish to appeal, you must first file a motion here in the trial
2    court asking me to allow you to withdraw your plea of guilty
3    and/or reconsider the sentence that I just imposed.  You have
4    thirty days within which to do that.  If you do not do that
5    within thirty days, you will lose your right to appeal.  If you
6    file that motion and it is denied, you will then have 30 days
7    from the date of the denial to file your Notice Of Appeal.

8            Also, if you are indigent, a copy of a transcript
9    of these proceedings can be supplied to you at no cost and an
10   attorney can be appointed to represent you at no cost in the
11   preparation of that motion or the appeal.

12           Do you understand all of that, sir?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Any questions over anything we covered?

15           MR. PLATEK:  Your Honor, he does -- he did have A bond

16   posted.  I would ask that, that apply to the costs.

17           THE COURT:  That's ordered.  And a Judgment fort he

18   remainder.  Do you have any questions over any of the questions?

19           THE DEFENDANT:  Can I get my building taken care of?

20           THE COURT:  That's not a question.  Do you have any

21   questions?

22           THE DEFENDANT:  Can I file my appeal now?

23           THE COURT:  I will not stay the mittimus.  What I cannot

24   do -- you cannot file your Notice of Appeal right now.  You will

```
 1    have to file the motion that I suggested. What I will do is set
 2    it over. I will give you a date right now to file my motion --
 3    your Motion To Reconsider My Finding On The Sentence. What date
 4    would you like to do that?
 5              MR. STRZLECKI: Your Honor, I would suggest two weeks.
 6              THE COURT: I will tell you right now I will grant your
 7    motion for the TASC evaluation in the meantime. All right. So
 8    that's granted, in spite of the sentence that I just imposed.
 9    And you can have him evaluated in the County Jail.
10              What date do you want?
11              MR. STRZLECKI: Your Honor. I would suggest then a four
12    week date. That should give them time to perform the
13    evaluation.
14              THE DEFENDANT: That would make it October 11 at 9:30
15    and his mittimus to Department of Corrections is stayed until
16    then.
17              Now, Mr. Holms, I still have one more date to
18    reconsider what I just did. And your attorney just picked the
19    date. Do you understand? So I may end up changing my mind
20    depending upon what he puts in that motion. That's always a
21    possibility. But if we are going to do treatment, we are going
22    to do it my way. Do you understand?
23              THE DEFENDANT: (nodding head and crying)
24              THE COURT: See you then.
```

```
 1
 2                    (Which were all of the proceedings had
 3                     in the above-entitled cause this date.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
 1        IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
                        WILL COUNTY, ILLINOIS
 2

 3

 4

 5

 6

 7          I, Annamarie Rimkevicius, a Certified Shorthand Reporter

 8     for the Circuit Court of Will County, Twelfth Judicial Circuit,

 9     do hereby certify that I reported in shorthand the proceedings

10     had on the trial in the above entitled cause; that I thereafter

11     caused the foregoing to be transcribed into typewriting, which I

12     hereby certify to be a true and accurate transcript of the

13     proceedings had before the Honorable Daniel J. Rozak,

14     Judge of said court.

15

16

17

18

19

20                                  Annamarie Rimkevicius
                                    License No. 084-002011
21
       Dated this 27th day of
22     September, 2002.

23

24
```

1    STATE OF ILLINOIS )
                     ) SS.

2    COUNTY OF WILL   )

3        IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
                   WILL COUNTY, ILLINOIS

4

5    THE PEOPLE OF THE STATE OF ILLINOIS,  )
                               )

6                       Plaintiff,)
                               )

7            -vs-            ) NO. 2001 CF 459
                               )

8    EDWARD C. HOLMES,           )
                               )

9                     Defendant.)

10         REPORT OF PROCEEDINGS had at the hearing of the

11    above-entitled cause before the Honorable DANIEL J. ROZAK,

12    on the 11th day of October, A.D., 2001.

13

14    APPEARANCES:

15        HON. JEFFERY J. TOMCZAK, State's Attorney
        BY:  MR. CHRISTOPHER MESSINA and MR. STEVE PLATEK,

16            Assistant State's Attorneys
            Appeared on behalf of the People;

17

        MR. JASON STRZELECKI, Assistant Public Defender

18            Appeared on behalf of the Defendant.

19

20

21

22             STEVE VITHOULKAS, CSR, RPR, RMR
                Will County Courthouse

23                 Joliet, IL  60432

24

1

EXHIBIT

B

1    THE COURT:  Edward Holmes, 2001 CF 459.  Motion to

2    reconsider sentencing or sentence, is that right?

3        MR. STRZELECKI:  That's correct.

4        MR. MESSINA:  Is there a 604(d) motion attached,

5    Judge?

6        THE COURT:  No.

7        MR. MESSINA:  We can't do it without one, Judge.

8        THE COURT:  I don't see one.  Did you file that?

9        MR. STRZELECKI:  I did not file a certificate, your

10   Honor.

11       THE COURT:  Okay.  Then do we need another date?

12       MR. STRZELECKI:  Your Honor, if I can have a few

13   moments, perhaps I can just prepare a certificate and file

14   that instanter.

15       THE COURT:  Okay.  I will pass it for a little bit.

16   Let me know when you are ready.

17                              (Matter passed and recalled.)

18       MR. STRZELECKI:  Edward Holmes, 2001 CF 459.

19       THE COURT:  Okay.

20       MR. STRZELECKI:  Your Honor, at this time I would seek

21   leave to file a certificate pursuant to Supreme Court Rule

22   604(d) instanter.

23       THE COURT:  Okay.  Here are the copies.  Okay.  On your

24   motion to reconsider sentence then, State is ready?

2

1    MR. PLATEK: Yes, your Honor.

2    THE COURT: Okay. Argument by the Defense?

3    MR. STRZELECKI: Your Honor, if you will recall at the

4    original sentencing, there was some talk and suggestion made

5    that Mr. Holmes would be eligible -- or might be eligible

6    for T.A.S.C. probation. In fact, the petition for

7    evaluation of T.A.S.C. probation was made and, in fact, an

8    evaluation took place, and Mr. Holmes was accepted, found

9    acceptable for T.A.S.C. probation. The recommendation

10   specifically indicates that he should be placed on an

11   outpatient substance abuse treatment.

12          Your Honor had indicated at the time of the

13   original sentencing that there may, in fact, be a

14   possibility that if Mr. Holmes was to be found acceptable

15   for T.A.S.C. probation, that your Honor might be inclined to

16   reconsider the sentence in this matter. Originally

17   Mr. Holmes was sentenced to a period of incarceration in the

18   Department of Corrections. As was discussed at the original

19   sentencing hearing, it's our position that Mr. Holmes is

20   actually a good candidate for probation, specifically

21   T.A.S.C. probation. He does have a number of health

22   problems which would make incarceration in the Department of

23   Corrections more difficult than for most.

24          We feel that his real problem is not an inherent

1    criminal nature, but rather a problem with drug dependency.

2    This has been a problem that's been ongoing for most of

3    Mr. Holmes' life.  He has sought treatment for these

4    problems several times throughout his life at different

5    facilities.  Consistently those facilities found him to be,

6    in effect, cured once they were done treating him.  But,

7    obviously, that was not the case.  This is a problem that

8    has been ongoing and to date has not been resolved.  We are

9    hoping by sentencing him to a period of T.A.S.C. probation,

10   that the outpatient substance abuse treatment recommended by

11   T.A.S.C. will be of some help to Mr. Holmes and will

12   alleviate the actual core problem that he has had throughout

13   his life.

14            THE COURT:  Okay.  State?

15            MR. PLATEK:  Your Honor, I ask that you deny the

16   motion.  This defendant has a history of drug use going all

17   the way back to 1978.  He has four prior felony convictions

18   regarding drug use.  At each and every decade he has had a

19   conviction for some drug-related felony since the '70s.

20   Also, throughout this whole time, he, as Counsel stated, has

21   received counseling, and it has not worked.  Counsel hasn't

22   said anything that would indicate that that would change

23   now.

24            Also, I would submit to the Court that the best

4

1    place for him to get treatment would probably be in the
2    Department of Corrections where he can get perhaps 24-hour
3    treatment, wouldn't have to worry about him having any type
4    of a relapse, assuming that there is no drugs in the
5    Department of Corrections, or that he is going to be limited
6    to getting drugs in the Department of Corrections. He can
7    certainly receive his counseling there where he can focus
8    100 percent of his attention on his problem rather than the
9    distractions that he apparently encounters while he is out
10   of custody.

11   THE COURT: Do you have a T.A.S.C. report? Let me see
12   it. Anything else from either side?

13   MR. PLATEK: Your Honor, just briefly. The report goes
14   on to say that he is acceptable, but it refers -- it's very
15   generic in nature. He is acceptable based on the fact that
16   he has volunteered for it, that there appears to be a nexus
17   between his substance abuse and criminal activity. That's
18   very generic and nonspecific. There isn't anything in the
19   report that indicates why they think that he will be likely
20   to be rehabilitated and be able to complete the program. In
21   fact, in one sentence they refer to him -- they misrefer to
22   him, they refer to him as her. I don't think this
23   specifically addresses his problem and his likelihood of
24   success.

5

1       THE COURT:  Four prior felony dispositions for

2   drug-related offenses, three of which resulted in time in

3   DOC.  I remember the case very well.  Mr. Holmes has some

4   serious health problems, does he not?

5       MR. STRZELECKI:  That's correct.

6       THE COURT:  I have a problem with the T.A.S.C. report

7   because looking at his prior record, those drug cases go

8   back to 1978, 23 years, and yet they are not recommending

9   in-patient.  I, for the life of me, can't figure out how

10  that could possibly be.  I have been around long enough to

11  know what's going to happen if Mr. Holmes gets released.  I

12  don't care if he is on any kind of an outpatient substance

13  abuse treatment plan, the first thing he is going to do is

14  head to some street corner and pick up some crack, no doubt

15  about it.  I am absolutely convinced of that.

16      Is there anything that prohibits me from

17  sentencing him to residential T.A.S.C. treatment in spite of

18  the report?  I think it's clear that he has a drug abuse

19  problem, no doubt about it, and at his age and health

20  condition, I really hate to send him to DOC, although I have

21  already done that.  I would consider the T.A.S.C. if it's

22  residential because it's not going to work without it, if it

23  even works with it, but I will give him the benefit on that

24  possibly.  Anything that prohibits me from doing that?

1    MR. STRZELECKI:  Your Honor, I am not aware of anything

2    by statute that would prohibit you from sentencing him to

3    T.A.S.C. in-patient treatment.

4         THE COURT:  I tell you what.  I will take the matter

5    under advisement further.  You come back with a report that

6    tells me whether they will take him residentially extended

7    period of time.  I am not talking about two weeks and he is

8    back out again.  I want three to six months minimum, and if

9    they will do that, I will further consider my alternatives

10   here.  How much time will it take you to get that answer?

11        MR. STRZELECKI:  Your Honor, I am going to ask for a

12   two-week date.

13        THE COURT:  Okay.  I won't be here in two weeks.  How

14   about three, is that all right?

15        MR. STRZELECKI:  That will be sufficient, your Honor.

16   Thank you.

17        THE COURT:  I will make it November 1st at 9:30 for

18   decision on the motion to reconsider.

19             (AND THOSE WERE ALL THE PROCEEDINGS HAD.)

20

21

22

23

24


7

1    STATE OF ILLINOIS   )
                           )  SS.

2    COUNTY OF W I L L  )

7           I, STEVE VITHOULKAS, Official Court Reporter for

8    the 12th Judicial Circuit, Will County, Illinois, do hereby

9    certify that I reported in shorthand as such official court

10   reporter the foregoing proceedings had before the Honorable

11   DANIEL J. ROZAK, Judge of said Court in the above-entitled

12   cause on the 11th day of October, 2001, and thereafter

13   caused to be transcribed into typewriting the foregoing

14   transcript which I hereby certify is a true and correct

15   transcription of my shorthand notes so taken of the evidence

16   offered and received on said date.

21                     STEVE VITHOULKAS
                          Official Court Reporter.

8

COURT DOCKET - WILL COUNTY CIRCUIT CLERK

4  CSP048
Date: 12/12/2002
Time: 12/13/43
Page:  4
User: ALCS

2001 CF 000459  Judge: ROZAK DANIEL J    From 0/00/0000 To 99/99/9

Date
7/09/2001 No Fine & Cost      .00
        Judge:ROZAK DANIEL J

7/09/2001 Disposition 03/00  Count 001  No Fine & Cost Signed
        Judge ROZAK DANIEL J  Defendant HOLMES EDWARD C  Atty STRZELECKI JASC
        Asst States Attorney HARVEY FREDERICK V
        Disposition: Guilty POSS AMT CON SUB EXCEPT(A)/(D)
        Disposition Type: Guilty Plea  Defendant Plea: Guilty
        Statute 720 570/402(c)  Class 4  Orig.
        Sentence: 07/09/2001
        Sentence: Awaiting Sentencing  Sentence In Force
        No Fine & Cost        .00
        Judge:ROZAK DANIEL J

8/15/2001 Notice of Motion FILED BY  Atty STRZELECKI JASON R

8/15/2001 Motion TO ELECT TREATMENT

9/13/2001
        People of the State of Illinois present by FREDERICK V. HARVEY,
        Defendant appears in person and by JASON R. STRZELECKI.  Matter
        comes on for sentencing.  Court is in receipt of Pre-Sentence
        Investigation Report.  Defense files a Petition to Elect
        Treatment. Arguments and suggestions heard.  Court sentences the
        defendant to 3 years in the Illinois Department of Corrections.
        Defendant shall receive credit for 2 days actually served.
        Defense Petition to Elect Treatment is Granted.  Matter is
        continued for hearing.  Defendants Bond is Revoked.  Defendant
        Remanded.  Mittimus to Sheriff.
        Hearing Oct 11,2001 09:30AM Rm404  Judge ROZAK
        Judge:ROZAK DANIEL J  Rep:RIMKEVICIUS ANNA MAR  Clerk:DAWS  M

9/17/2001 Sheriff Fee Filed Sep 15,2001 Judge ROZAK Amt $41.00

10/04/2001 Notice of Motion FILED BY  Atty STRZELECKI JASON R

10/04/2001 Motion TO RECONSIDER SENTENCE

10/10/2001 Impounded Document - T.A.S.C. Report dated October 9, 2001

10/11/2001 Sheriff's Fee Bill Amt $10.00

10/11/2001 Sheriff's Fee Bill Amt $10.00

10/11/2001
        People of the State of Illinois present by STEVEN T. PLATEK.
        Defendant appears in custody of the Will County Sheriff and by
        JASON R. STRZELECKI.  Matter comes on for hearing on Defense
        Motion to Reconsider Sentence.  Arguments heard.  Court takes
        matter underadvisement. (Awaiting TASC in-patient treatment)
        Defendant Remanded.
        Under Advisement Nov 01,2001 09:30AM Rm404  Judge ROZAK Canceled.
        Judge:ROZAK DANIEL J  Rep:VITHOULKAS STEVE  Clerk:DAWS  M

**EXHIBIT**
C

0000021

C O N T I N U E D  O N  N E X T  P A G E

12/12/2002 12:17 FAX 8157278896     WILL CO CIR CLK     ☒019

COURT DOCKET - WILL COUNTY CIRCUIT CLERK       5  CSP048
Date: 12/12/2002
Time: 12/13/43
Page:   5

2001 CF 000459   Judge: ROZAK DANIEL J     From   0/00/0000 To 99/99/9
User: ALCS

Date
10/12/2001

★

People of the State of Illinois present by FREDERICK V. HARVEY.
Defendant appears in custody of the Will County Sheriff and by
JASON R. STRZELECKI.  Matter comes on for Defense Motion to
Reconsider Sentence.  Arguments having been heard.  Court grants
Defense Motion.  The 3 year Sentence to the Department of
Corrections is Vacated.  Court reviews the Pre-Sentence
Investigation Report.  Court Sentences the defendant to 60 months
T.A.S.C. Probation.  Defendant shall pay Court Costs in the amount
of $340.00; Drug Related Fine of $100.00; Street Value Fine of
$10.00; Drug Assessment Fee of $500.00 and Crime Lab Fee of
$50.00; bond to apply.  Bond is ReInstated.  Remaining bond is
ordered refunded to surety.  The defendant is ordered to comply
with recommendations made by T.A.S.C. The defendant is advised of
and understands the appellate rights.  Probation is to monitor.
Matter is continued for termination.
Judge:ROZAK DANIEL J    Rep:DANLEY JENNIFER    Clerk:DAWS  M

10/12/2001 See Probation Order Signed

10/12/2001 See Order Signed

10/12/2001 Sheriff's Fee Bill Amt $10.00

10/12/2001 Disposition 03/01   Count 001   Fine & Cost Total Fee $1000.00   Signed
Judge ROZAK DANIEL J   Defendant HOLMES EDWARD C   Atty STRZELECKI JASO
Asst States Attorney HARVEY FREDERICK V
Disposition: Guilty Plea/Ch. 111.5, Par.6360-2 POSS AMT CON SUB EXCE
Disposition Type: Court Action    Defendant Plea: Guilty
Statute 720 570/402(c)   Class 4   Orig.
Sentence: 10/12/2001
Sentence: Jail    30Days   Sentence In Force
Sentence: Probation    60Mos   Sentence In Force
Sentence: Credit Time Served    30Days   Sentence In Force
Sentence: Fines and/or Cost/Penalties and Fees   Sentence In Force
Sentence: Drug Addiction Treatment   Sentence In Force

| Fine & Cost Total | 445.00 | DRUG FUND-JUVENILE | 1.25 |
| DRUG FUND-COUNTY | 3.75 | DRUG FUND-ASSESSMEN | 500.00 |
| CRIME LAB | 50.00 | COURT ORDERED COSTS | .00 |

Status:Closed   Report:Terminated   Oct 12,2001
Termination Oct 12,2006 09:30AM Rm404   Judge ROZAK
Judge:ROZAK DANIEL J

10/18/2001 Court Ordered Payments Fee $1000.00   Amt $1000.00   Bond Used
Defendant HOLMES EDWARD C

2/15/2002 Probation Report-requesting status/progress report FILED BY
WILL COUNTY ADULT PROBATION DE

0000022