

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWARD HOLMES,                    )
    Plaintiff,                )
                 )
v.                               )   **Case No.  02 C 7266**
                 )   **Magistrate Judge Geraldine Soat Brown**
DR. KUL SOOD,                    )
    Defendant.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Holmes brings this action pursuant to 42 U.S.C. § 1983 against Dr. Kul

Sood, alleging that Sood, a physician at the Will County Adult Detention Facility ("WCADF") was

deliberately indifferent to his medical needs while Holmes was incarcerated at the WCADF.

(Second Am. Compl. ¶¶ 1, 5-19.) [Dkt 33.]  Particularly, Holmes claims that Sood's failure to treat

Holmes' abdominal pain and distention properly necessitated subsequent surgery and treatment.

(*Id.*)  He seeks compensatory damages for medical expenses, physical and mental suffering and

punitive damages.  (Proposed Pretrial Order at 8.) [Dkt 125.]


### DISCUSSION

This case comes before the court on the parties' respective motions in limine.  All relevant

evidence is admissible, unless there is some basis for exclusion, and evidence that is not relevant is

not admissible. Fed. R. Evid. 402.  The party moving in limine to exclude relevant evidence must

demonstrate a basis for exclusion, consistent with Rule 402.  *See Plair v. E.J. Brach & Sons, Inc.*,

864 F. Supp. 67, 69 (N.D. Ill. 1994).  The denial of a motion in limine does not mean that the

evidence is necessarily admissible, rather, it means only that the party moving in limine has not demonstrated that there is no possible basis for the admission of the evidence. *See id.*; *Alexander v. Mt. Sinai Hosp. Med. Center of Chicago*, No. 00 C 2907, 2005 WL 3710369 at *2 (N.D. Ill. Jan. 14, 2005) (Kocoras, J.). The denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at trial. Any party who believes that evidence is being introduced that was excluded by a ruling on a motion in limine must object on that basis at the time that the evidence is being introduced.

## I.     Plaintiff's Motion to Bar Conviction Evidence

Holmes moves to bar evidence of any conviction other than the conviction for which he was jailed at the time of his injuries and to bar all evidence of the nature of the crime underlying any conviction. (Pl.'s First Mot. Lim.) [Dkt 87.] That motion is granted in part and moot in part.

Holmes has been convicted four times for possession of a controlled substance. (*Id.* at 2.) Three of those convictions occurred in 1990 and 1991 and are more than ten years old. (*Id.*) The fourth conviction is the conviction for which Holmes was incarcerated at the time of the events in this case. (*Id.*) Although the jury will know based on the nature of the case that Holmes was a prisoner at the time of the events at issue, Holmes moves pursuant to Fed. R. Evid. 403, 609(a)(1), and 609(b) to bar any underlying details about that conviction. (*Id.* at 1-2.) Holmes also moves to bar completely any evidence regarding the three convictions from 1990 and 1991, arguing that they have no relevance to the merits of his medical care claims or his veracity and may work to unfairly prejudice some jurors. (*Id.*)

2

Fed. R. Evid. 609(a)(1) governs the impeachment of a witness through evidence of a prior

crime and provides in relevant part:

> For the purpose of attacking the credibility of a witness, evidence that a witness . . .
> has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was
> punishable by death or imprisonment in excess of one year under the law under
> which the witness was convicted . . . .

Rule 609(b) provides a time limit for the use of evidence of convictions:

> Evidence of a conviction under this rule is not admissible if a period of more than ten
> years has elapsed since the date of the conviction or of the release of the witness from
> the confinement imposed for that conviction, whichever is the later date, unless the
> court determines, in the interest of justice, that the probative value of the conviction
> supported by specific facts and circumstances substantially outweighs its prejudicial
> effect.

Evidence of prior convictions admissible under Rule 609 must also be considered in light of

Rule 403, which provides that relevant evidence "may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

evidence."

## A.     Three Prior Convictions

Holmes argues that his 1990 and 1991 convictions are more than ten years old and are

presumptively barred by Fed. R. Evid. 609(b). Sood responds that he should be permitted to present

evidence of those prior convictions because Holmes lied about them during his deposition. (Def.'s

Resp. First Mot. Lim. at 5.) [Dkt 107.] Sood claims that, at his deposition, Holmes "denied, under

oath, that he has three prior felony convictions" and argues that he (Sood) should be allowed to

impeach Holmes with the prior false testimony. (*Id.*)

3

Holmes contends that he did not attempt to mislead at his deposition, but rather that his testimony represented his lay understanding of his convictions. (Pl.'s First Mot. Lim. at 4.) Holmes asserts that additional questioning revealed that there was a misunderstanding between Holmes and counsel, which was immediately corrected. (*Id.* at 5-6.) The deposition testimony at issue is the following:

> Q. I believe I was asking you before about other convictions. You have had at least one other conviction, correct?
>
> A. Just one.
>
> Q. Besides this case?
>
> A. One more, yes.
>
> . . .
>
> Q. Okay. Now, on September 13, 2001, during that court appearance Judge Rozak talked about there being three separate convictions that resulted in one consolidated sentence. Did you have three separate possession charges, do you know? Do you remember him saying that?
>
> A. He said that. They had arrested me three times. So, they ran - - all that they said three convictions. They put all that into one. I don't know how they do that. They are trying to railroad you.
>
> Q. So, as far as Judge Rozak was concerned, you had three convictions. As far as you are concerned, you had one conviction?
>
> A. They run it concurrently. It was three cases they ran concurrently.

(Pl.'s First Mot. Limine, Ex. A., Deposition of Edward Holmes at 190-91.)

Contrary to Sood's argument, Holmes' deposition testimony does not demonstrate a clear attempt to deceive counsel. Rather, it appears that he may have misunderstood the question or been confused about the explanation he initially provided when testifying that he had one other case.

4

When asked for more details, Holmes explained that the three convictions were "put all . . . into one" and ran concurrently. That deposition testimony does not provide a basis for admitting evidence of the earlier convictions. Holmes' motion to exclude evidence of those convictions is granted.

### B.     2001 Conviction

Holmes argues that evidence about the conviction for which he was incarcerated at the time of the events in this case should be barred because it involved a drug offense, not dishonesty or false statements under Fed. R. Evid. 609(a)(2) and that the probative value of the details regarding the 2001 conviction is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. (Pl.'s First Mot. Lim. at 2.) However, at the hearing on the motions in limine, Holmes' counsel conceded that if the court allows the jury to hear evidence about Holmes' substance abuse, Holmes' counsel will likely inform the jury about the circumstances surrounding the 2001 conviction. As will be discussed below, Holmes' motion in limine to preclude substance abuse evidence is being denied. Accordingly, the court understands that this portion of Plaintiff's First Motion In Limine is moot.

### II.     Plaintiff's Motion to Bar Prior Arrest Evidence

Holmes moves to bar reference to prior arrests, other than the arrest for which he was jailed in March 2001. (Pl.'s Second Mot. Lim.) [Dkt 89.] That motion is granted in part and denied in part.

Holmes moves to bar any references to his previous arrest record, but concedes that the jury must hear about his March 2001 arrest because he was seen by medical staff at that time and three pages of medical records were generated. (Id. at 1-2.) Those records were part of Holmes' medical

5

chart when he was incarcerated in September 2001. (*Id.*) Holmes requests that the evidence be limited to the fact that he was at WACDF briefly in March following an arrest. (*Id.*) Sood does not object to the motion with regard to Holmes' prior arrests, except regarding the convictions that were subject to Holmes' First Motion in Limine. (Def.'s Resp. Second Mot. Lim. at 1.) [Dkt 108.] Because Holmes' motion was granted to exclude evidence of his earlier convictions, this motion is likewise granted to exclude evidence of Holmes' arrests on those earlier charges.

Holmes also moves to bar any evidence regarding the prior arrest of Tim Smith. (Pl.'s Second Mot. Lim. at 1-2.) Smith was incarcerated at the WCADF in September and October 2001, and may be called to testify about Holmes' medical condition during that time. (*Id.* at 1.) At oral argument, Holmes' counsel clarified that the jury should be informed only that Smith was an inmate with Holmes, without any reference to the fact that Smith was charged with murder and later acquitted. Sood's counsel responded that the jury should be informed that Smith was incarcerated for a serious charge for which he faced a serious sentence, to demonstrate Smith's bias against the individuals at the WCADF.

When evaluating a witness's testimony, a jury is permitted to consider things such as ability to perceive and possible bias or sympathy. The circumstances surrounding Smith's incarceration, including the seriousness of the charge against him, may tend to show such bias. Accordingly, Holmes' second motion in limine is denied. However, if Sood's counsel presents evidence to the jury about Smith's murder charge, Holmes' counsel may present evidence about the circumstances surrounding the charge and Smith's subsequent acquittal.

6

## III.    Plaintiff's Motion to Bar Substance Abuse Evidence

Holmes moves to have any references to his prior substance abused barred pursuant to Fed.

R. Evid. 402, on the ground that such evidence is not relevant and, alternatively, pursuant to Fed. R.

Evid. 403, on the ground that any mention of addiction and substance abuse presents a serious danger

that the case will be decided based on prejudice, rather than on the merits. (Pl.'s Third Mot. Lim.)

[Dkt 91.] Holmes' motion to bar all references to his prior substance abuse is denied.

Holmes cites a number of cases to support his contention that courts are extremely cautious

before letting evidence of substance abuse into a trial. (*Id.* at 2-3.) For example, in *U.S. v. Cameron*,

814 F.2d 403, 405 (7th Cir. 1987), the Seventh Circuit affirmed the district court's refusal to admit

evidence about a witness' prior drug use to impeach his credibility. While finding that use of illegal

drugs may be probative of a witness' memory or mental capacity if it is a legitimate issue at trial, the

Seventh Circuit held that "[a]t the same time, however, there is considerable danger that evidence

that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the

witness' testimony." *Cameron,* 814 F.2d at 405. Thus, the court concluded that a court must "be

chary in admitting such evidence when it is offered for the *sole purpose* of making a general

character attack." *Id.* (emphasis added).

At oral argument on the motion, Sood's counsel stated that evidence of Holmes' substance

abuse would *not* be used to attack Holmes' character or credibility, or to argue that Holmes' civil

rights are in any way less worthy of protection because of substance abuse. Instead, Sood argues that

Holmes' past illegal substance abuse may be used for impeachment because at his deposition Holmes

admitted that during his sentencing, he lied to the state court judge about his drug use. (Def.'s Resp.

Third Mot. Lim. at 3-4.) [Dkt 109.] It is not necessary for Sood's counsel to explore the extent of

7

Holmes' illegal drug use in order to impeach him with that admission. If that were the only reason for the admission of Holmes' history of illegal drug use, Holmes' argument under Rule 403 might be well-taken. However, Sood also argues that Holmes' history of substance abuse is relevant evidence on the medical issues in the case.

Sood's position is that Holmes' gastrointestinal problems were caused, at least in part, by his prior narcotic and alcohol use. (Def.'s Resp. Third Mot. Lim. at 1.) Sood cites testimony from Holmes' own expert witness, Dr. Franklin, that narcotic use may have been a factor in the chronic intestinal ileus from which Holmes suffered before his incarceration. (Def.'s Resp. Third Mot. Lim., Ex. A at 57.) In addition, Sood argues that the evidence of Holmes' history of narcotic use, both the prescribed narcotics that he took for a number of medical conditions and the illegal street narcotics, is relevant to rebut Holmes' claim that Sood's treatment was the cause of his subsequent medical problems. (Def.'s Resp. Third Mot. Lim. at 3.) Holmes responds that Sood cannot distinguish between the causative effect of the prescribed narcotics and the illegal drugs Holmes took, and further, that how Holmes developed ileus prior to his admission to the WCADF is irrelevant. (Pl.'s Third Mot. Lim. at 5-6.)

The motion to bar the substance abuse evidence is denied. This is not a case in which a party seeks to bring in evidence of illegal drug use solely or primarily to discredit a witness. At trial, Holmes is seeking to recover for past medical treatment including surgery that he had to undergo, as well as future medical care that he may need, including possible additional surgery, allegedly because of Sood's deliberate indifference. Sood suggests that future medical care Holmes may need for his intestinal conditions was not caused by his (Sood's) actions, but would have been necessary regardless of his actions. (Def.'s Resp. Third Mot. Lim. at 3.) The evidence presented on the motion

8

demonstrates that, according to the experts for both sides, Holmes' use of narcotics, both legal and illegal, may have played a role in the intestinal conditions which Holmes claims were aggravated by Sood's actions. The extent, including duration and amount, of Holmes' use of narcotics, both legal and illegal, is something the jury may consider in evaluating the parties' arguments regarding whether Holmes' damages were caused by Sood or are the result of the natural course of his disease.

## IV.    Plaintiff's Motion to Bar Evidence of Other Health Conditions

Holmes moves pursuant to Fed. R. Evid. 403 to bar evidence regarding his other health conditions, including his medical history of orthopedic treatment, arthritis, asthma, hemorrhoids, two hip replacement surgeries, and erectile dysfunction. (Pl.'s Fourth Mot. Lim. 1, 2, 4.) [Dkt 93.] At oral argument, Holmes' counsel withdrew this motion after Sood's counsel agreed not to present evidence regarding Holmes' erectile dysfunction. Accordingly, the motion is withdrawn.

## V.    Plaintiff's Motion to Bar Evidence about his Sentence

Holmes moves to bar reference to the length or details of the sentence for which he was incarcerated. (Pl.'s Sixth Mot. Lim.) [Dkt 97.] At oral argument, Holmes' counsel stated that this motion is based on his premise that the substance abuse evidence should not be admitted at trial. However, it is apparent that Holmes cannot put before the jury evidence that he wants the jury to hear – that Holmes was released after his initial sentencing and put on probation – without also allowing the jury to hear evidence about the reason why Holmes was eligible for a shorter sentence, that is, that his sentence was for possession of a controlled substance. Furthermore, as discussed above, the substance abuse evidence will not be excluded. At oral argument, Holmes' counsel

9

conceded that there is no reason to bar explaining Holmes' sentence to the jury, and withdrew the motion, while still preserving Holmes' objection that the substance abuse evidence should not be admitted.

## VI.    Defendant's Motion to Bar Cumulative Expert Witness Testimony

Sood moves to bar Holmes from presenting the testimony of both Dr. Ronald Himmelman and Dr. James Franklin regarding their criticism that Sood should have sent Holmes to the hospital for an obstructive series of x-rays. (Def.'s First Mot. Lim. ¶¶ 5-6.) [Dkt 101.] Holmes responds that Dr. Himmelman, an emergency room physician, and Dr. Franklin, a gastroenterologist, have different areas of expertise, bring different medical perspectives to the case, have reviewed the case for different purposes, and will address different subject matters in their testimony. (Pl.'s Resp. First Mot. Lim. at 1.) [Dkt 113.] Specifically, Holmes asserts that one expert will testify regarding the issue of liability, while the other will testify about causation and damages. (*Id.*)

Sood cites *Hill v. Porter Mem. Hosp.*, 90 F.3d 220 (7th Cir. 1996), as support for his argument that it is proper for a court to exclude cumulative evidence, even if the testimony comes from a medical expert. (Def.'s First Mot. Lim ¶ 4.) However, the expert witnesses in *Hill* were not excluded because their testimony was cumulative, but rather because their late disclosure violated the court's scheduling order. 90 F.3d at 222, 224. The Seventh Circuit affirmed the district court's decision, finding that counsel had not provided a persuasive explanation for the untimely disclosures. *Id.* at 224. The court noted that "the trial testimony of Drs. Cranberg and Rothenberg would have been largely, if not totally, cumulative of Mrs. Hill's other experts" in the context of showing that the plaintiff had not demonstrated prejudice from the decision to exclude. (*Id.*).

The only basis on which Sood argues that Dr. Himmelman and Dr. Franklin's opinions are cumulative is that the fact that they will both testify that Sood should have sent Holmes to the hospital for an obstructive series of x-rays. (Def.'s First Mot. Lim. ¶ 5.) Holmes, on the other hand, states that the experts will not be limited to the one question cited in Sood's motion; rather, they each will address different medical issues from different medical perspectives. (Pl.'s Resp. at 5.) The fact that their testimony and opinions may overlap to some extent does not demonstrate a sufficient basis of undue delay, waste of time, or needless presentation of cumulative evidence under Fed. R. Evid. 403 to bar the testimony of either witness. Defendant's First Motion In Limine to bar cumulative expert witness testimony is denied.

## VII. Defendant's Motion to Bar Photographs

Sood moves to bar admission of five photographs of Holmes (identified as Pl. Ex. 1) taken by Holmes' wife, Marilyn[1]. (Def.'s Third Mot. Lim.) [Dkt 103.]

On March 31, 2005, Marilyn submitted an affidavit regarding the photographs. In her affidavit, Marilyn stated that on October 14, 2001, she took Holmes directly from the WCADF to Silver Cross Hospital, and on the morning of October 15, 2001, she took the five photographs of Holmes. (Def.'s Third Mot. Lim., Ex. B, Affidavit of Marilyn Holmes ¶¶ 5-6.) She further stated that she was familiar with Holmes' appearance in September and October 2001 because she visited him almost daily while he was detained at WCADF, and that the photographs are a fair, accurate and

---

[1] For the sake of clarity, Holmes' wife, Marilyn Holmes, will be referred to herein as "Marilyn."

true depiction of Holmes on October 14 and 15, 2001 and for at least approximately one week prior to his release. (*Id.* ¶¶ 3, 7.)

Sood objects that Holmes has not provided a proper foundation and that the photographs are irrelevant. (Def.'s Third Mot. Lim. ¶¶ 6, 8, 9, 10, 11.) Sood argues that photographs taken on October 15, 2001, following Holmes' major surgery on October 14, cannot accurately depict Holmes' condition on the days preceding the surgery.[2] Accordingly, Sood argues that the photographs cannot satisfy Fed. R. Evid. 901(a), which provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." However, Marilyn's affidavit provides a basis for her knowledge of Holmes' condition prior to his surgery, and states that the photographs represent Holmes' appearance prior to his release from the WCADF. Pursuant to Fed. R. Evid. 901(b)(1), the testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient for authentication or identification under Rule 901. Sood's motion in limine cannot be granted on the basis of lack of foundation because, based on the affidavit, Marilyn may be able to lay a foundation at trial for the admission of the photographs.

Sood also argues that the photographs are irrelevant because he last saw Holmes on September 26, 2001 (16 days prior to his release on October 12), and he never saw Holmes in the condition depicted in the pictures. (Def.'s Third Mot. Lim. ¶¶ 4, 5, 9.) Contrary to Sood's argument,

---

[2] Holmes now states that the photographs were taken on October 13, 2001 (prior to his surgery), not October 15 as stated in Marilyn's affidavit. (Pl.'s Resp. Third Mot. Lim. at 5 n. 1.) [Dkt 117.] Holmes calls this a "typographical error" in the affidavit. (*Id.*) However, Holmes fails to include any factual support for his current statement, such as a supplemental affidavit from Marilyn. For purposes of this decision, the court will assume that the facts are as stated in Marilyn's affidavit.

if an adequate foundation is laid, the photographs may be relevant to the issues in this case, including Holmes' condition at the time he was released from the WCADF. According to Holmes, the evidence will establish that Sood was responsible for Holmes' medical treatment during his incarceration and that Sood was informed by the nursing staff Holmes' condition on at least five occasions after September 26, 2001. Holmes' condition at the time he was at the WCADF is relevant, and whether or not Sood was aware of that condition will be one of the factual issues for trial.

Accordingly, Defendant's Third Motion In Limine is denied without prejudice to any objection that Sood may make at trial.

## VIII. Defendant's Motion to Bar Evidence of Other Claims

Sood moves to bar evidence of any prior or other claims. (Def.'s Fourth Mot. Lim. at 1.) [Dkt 104.] Because the hearing on this motion was continued, it will be addressed separately.

## IX. Motions to Bar Rule 26(a) Testimony

Holmes moves to bar Rule 26(a)(2) testimony from Sood (Pl.'s Fifth Mot. Lim.) [dkt 95] and Sood moves to bar expert opinion testimony which has not been disclosed pursuant to Rule 26(a)(2) (Def.'s Second Mot. Lim.) [dkt 102]. As detailed below, Plaintiff's Fifth Motion in Limine is granted in part to bar Sood from giving testimony regarding causation, prognosis or future impact. Defendant's Second Motion in Limine is also granted in part, to the extent set out below.

In January 2003, Holmes disclosed Dottie Clark and the unknown nurses at the WCADF as persons with information pursuant to Fed. R. Civ. P. 26(a)(1). (Pl.'s Resp. Second Mot. Lim., Ex.

13

A.) [Dkt 115.] In his response to Defendant's first set of interrogatories in February 2003, Holmes disclosed Dr. Saeed Darbandi, Dottie Clark, the unknown nurses at the WCADF, and Julie (unknown last name), a counselor at the WCADF, as witnesses. (*Id.*) In March 2003, Holmes served a notice of deposition for Carleen Sloan, John Petrocelli, Christine Keenan, Mary Jo O'Sullivan, and Cindy Bost. (*Id.*, Ex. D.) In April 2003, Holmes served a notice of deposition for Nurse Petrocelli, Nurse Sloan, and Sood. (*Id.*) In September 2003, Holmes served a notice of deposition for Sood, John Petrocelli, Carleen Sloan, Mary Jo O'Sullivan, Chris Keenan, and Cindy Boston. (*Id.*)

On February 9, 2004, the parties filed a joint motion to amend the discovery schedule. (Def.'s Second Mot. Lim., Ex. B.) In that motion, Holmes stated that he intended to call his treating physicians to testify only to his treatment and that they would not provide testimony regarding causation, prognosis and future impact. (*Id.* at ¶ 3.) On April 6, 2004, Holmes provided defense counsel with an affidavit from Christine Keenan. (Pl.'s Resp. Second Mot. Lim., Ex. E.) On May 14, 2004, Holmes disclosed Dr. Franklin and Dr. Himmelman as expert witnesses and provided their expert reports. (Def.'s Second Mot. Lim., Ex. A.) In the proposed final pretrial order, Holmes stated that he would call Sood as a witness and may call Julie McCabe (Sterr), Christine Keenan, Dottie Clark, Mary Jo O'Sullivan, John Petrocelli, Cindy Boston, Carleen Sloan, Dr. Darbandi and Dr. Rotnicki as witnesses at trial. (Proposed Pretrial Order at 3-6.)

## A. Treating Physicians

### 1. Dr. Saeed Darbandi

Holmes asserts that Dr. Darbandi was disclosed as a non-opinion fact witness in his Rule 26(a)(1) disclosures and a letter dated February 18, 2004. (Pl.'s Resp. Second Mot. Lim. at 2.) However, Holmes' argument fails to recognize the distinction between a fact witness and a treating

14

physician who may provide testimony that is based on "scientific, technical or other specialized knowledge" pursuant to Fed. R. Evid. 702. Although Dr. Darbandi was Holmes' treating physician, his testimony about his diagnosis and treatment of Holmes is based on his specialized knowledge. Pursuant to *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004), and this court's standing order (Standing Order as to Expert Disclosure and Discovery, http://www.ilnd.uscourts.gov/JUDGE/BROWN/Expert.htm (last updated Dec. 2003)), Holmes was required to make a formal disclosure pursuant to Rule 26(a)(2).

However, Holmes' counsel's February 18, 2004 letter advised Sood's counsel that Holmes might call Dr. Darbandi to testify at trial regarding his treatment of Holmes. (Pl.'s Resp. Second Mot. Lim., Ex. B.) Additionally, the parties' joint motion to amend the discovery schedule demonstrates that Sood was aware that Dr. Darbandi would be called as a witness to testify as to his treatment of Holmes. Furthermore, Dr. Darbandi was also deposed in this case, and Sood's counsel had an opportunity to question him regarding his qualifications and the testimony he would provide. Dr. Darbandi will be permitted to testify about his treatment of Holmes, but his trial testimony may not go beyond the testimony he provided at his deposition. Furthermore, because Dr. Darbandi failed to serve an expert report, he will be barred from testifying about causation, prognosis, or the future impact of Holmes' condition.

### 2. **Dr. Rotnicki**

Holmes has agreed to withdraw Dr. Rotnicki from his witness list. (Pl.'s Resp. Second Mot. Lim. at 3.)

15

### 3.    Dr. Kul Sood

Ironically, both parties seek to exclude the testimony of Sood, while at the same time expecting to call him as a witness in their own case. (Pl.'s Fifth Mot. Lim. at 3-5; Def.'s Second Mot. Lim. ¶ 15)

Sood objects to his being called by Holmes because Holmes failed to serve any Rule 26(a)(2) disclosure listing Sood. (Def.'s Second Mot. Lim. ¶ 15.) Holmes responds that Sood will be called as the defendant in this case and he will not seek to elicit any "expert opinion testimony" from Sood. (Pl.'s Resp. Second Mot. Lim. at 3.) It is not entirely clear what Holmes' argument means. Certainly, any testimony Sood provides about his treatment of Holmes can be expected to be based on his specialized training. *See* Fed. R. Evid. 702.

Holmes, in turn, moves to bar Sood from providing expert testimony because he did not disclose himself as a witness under Fed. R. Civ. P. 26(a)(2)(A) or (B) and failed to submit an expert report regarding his opinions. (Pl.'s Fifth Mot. Lim. at 1-2, 3.) Holmes argues that, at a minimum, Sood should be barred from testifying about causation, prognosis, and future impact because he failed to serve an expert report as required by Rule 26(a)(2)(B). (*Id.* at 4.)

Sood responds that, contrary to Holmes' argument, he was properly disclosed pursuant to Rule 26(a)(2)(A) in a letter dated August 4, 2004. (Def.'s Resp. Fifth Mot. Lim. at 1-2.) [Dkt 111.] That letter states that Sood will testify regarding, *inter alia*, Holmes' care and treatment, Holmes' symptoms and subjective complaints, the records he reviewed regarding Holmes' prior treatment, the chronic nature of Holmes' condition as it existed during Sood's treatment, and that the conservative course of care and treatment Holmes received was timely and appropriate in light of his symptoms and prior medical history. (*Id.*, Ex. A.) That disclosure satisfied the requirement of the court's

standing order (Standing Order as to Expert Disclosure and Discovery, http://www.ilnd.uscourts.gov/JUDGE/ BROWN/Expert.htm) and *Musser*, 356 F.3d at 757-58. Additionally, Sood sat for depositions, at which he discussed his educational background and the treatment that he provided to Holmes while he was incarcerated. From the motions, it appears that both parties intend to call Sood to testify regarding the topics listed in Sood's counsel's letter of August 4, 2004. Those subjects were thoroughly explored in discovery, and the motions are denied as to that testimony. It is undisputed that Sood did not provide a Rule 26(a)(2)(B) report. Accordingly, he may not testify about causation, prognosis, or the future impact of Holmes' condition. However, neither party suggests that it intends to call Sood to provide such testimony.

### B.    Nurses

Sood argues that the nurses who provided treatment to Holmes, including Christine Keenan, Dottie Clark, Mary Jo O'Sullivan, John Petrocelli, Cindy Boston, and Carleen Sloan, should have been disclosed under Rule 26(a)(2)(A) because the only relevant testimony they can provide is based on scientific, technical and specialized knowledge the nurses possess. (Def.'s Second Mot. Lim. ¶¶ 8, 16.) Holmes argues that these witnesses were not subject to disclosure under Rule 26(a)(2) because they are not expert witnesses, but rather were properly disclosed under Rule 26(a)(1) as fact witnesses. (Pl.'s Resp. Second Mot. Lim. at 3-6.)

### 1.    Dottie Clark

Holmes contends that his sister, Dottie Clark, is a fact witness and was properly disclosed in his 2003 Rule 26(a)(1) disclosures and 2004 interrogatory responses. (Pl.'s Resp. Second Mot. Lim. at 3-4.) She was deposed in March 2003. (*Id.* at 4, Ex. C.) At her deposition, Ms. Clark testified that she has no knowledge about the medical care or treatment Holmes received while

17

incarcerated and that she will not provide any opinions about the care he received. (Clark Dep. at 42-45, 54.) Rather, Holmes claims that Ms. Clark will testify about her observations and perception of her brother's injuries, pain and suffering. (Pl.'s Resp. Second Mot. Lim. at 4 n. 2.) That is lay witness testimony under Rule 701. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 875 (N.D. Ill. 2003) (noting that lay testimony regarding "subjective symptoms including, but not limited to, pain from or the existence of bruises, cuts, and abrasions resulting from [a] beating is admissible because it does not require the knowledge of an expert witness").

Because Ms. Clark's testimony will be based on her observations regarding Holmes' condition and pain, she was properly disclosed as a fact witness. As such, however, her testimony will be limited to her observations. Because Ms. Clark has specialized training as a nurse, any testimony regarding that training may improperly bolster her lay opinion in the eyes of the jury. Therefore, she will be limited to testifying that she is gainfully employed and may not mention her training as a nurse.

## 2. Other Wexford Nurses

Holmes asserts that in his January 2003 Rule 26(a)(1) disclosures and February 2004 interrogatory responses, he properly disclosed the "then-unidentified WCADF medical staff as witnesses . . . ." (Pl.'s Resp. Second Mot. Lim. at 4.) The nurses who made entries in his medical records were later identified through discovery. (*Id.*) Those nurses include Christine Keenan, Mary Jo O'Sullivan, John Petrocelli, Cindy Boston, and Carleen Sloan. (*Id.*) In January 2004, Ms. O'Sullivan, Mr. Petrocelli, Ms. Boston and Ms. Sloan were produced for deposition. (*Id.* at 4-5, Exs. F, G, H, I.) When Holmes served the notice of deposition, Ms. Keenan was no longer employed at Wexford and Sood's counsel provided her last known address. (*Id.* at 5.) On April 6, 2004,

18

Holmes produced Ms. Keenan's affidavit. (*Id.*, Ex. E.) However, Ms. Keenan was not deposed. (Def.'s Second Mot. Lim. at ¶ 19.)

In response to Sood's motion, Holmes asserts that these witnesses are not subject disclosure pursuant to Rule 26(a)(2) because they are not expert witnesses and will not provide opinion testimony. (Pl.'s Resp. Second Mot. Lim. at 4.)[3] Holmes states that the nurses are fact witnesses who will testify regarding their observations, notes in the medical record, and knowledge of the practices at the medical unit. (*Id.* at 5-6.) Holmes states that none of the nurses, with the exception of Christine Keenan, have any recollection of Holmes. (*Id.* at 6 n. 3.) From the deposition testimony before the court, it appears that their testimony is more properly characterized as fact testimony or lay opinion evidence pursuant to Rule 701, rather than testimony based on their specialized knowledge and training, which is Rule 702 testimony.[4] Thus, the motion in limine is denied as to those nurses; however, the trial testimony of the nurses who were deposed, including

---

[3]In his response, Holmes claims that only witnesses who are to give "opinion testimony" must be disclosed pursuant to Rule 26(a)(2). (Pl.'s Resp. Second Mot. Lim. at 6.) That is not correct. Rule 26(a)(2) requires formal disclosure of *any* witness who is to provide testimony under Rule 702. Rule 702 permits a witness qualified as an expert by knowledge, skill or training to testify thereto "in the form of an opinion or otherwise."

[4]At oral argument, Holmes' counsel argued that the court's standing order regarding the disclosure of expert witnesses discusses only the disclosure of physicians. Apparently, Holmes' counsel did not consider the possible application of Rule 26(a)(2) to other treating professionals, such as nurses. While the standing order details the disclosure obligations under Rule 26(a)(2) as applied to treating physicians, including the obligation of a treating physician who is going to opine about causation to provide a written report, that order does not serve to limit the parties' obligations under Rule 26(a)(2). On the contrary, it specifically discusses what is required of "[a]ll experts required to be disclosed pursuant to Rule 26(a)(2)(A)." (Standing Order as to Expert Disclosure and Discovery, http://www.ilnd.uscourts.gov/JUDGE/ BROWN/Expert.htm). If the nurses were to testify based on their specialized knowledge and training, they would be subject to formal disclosures under Rule 26(a)(2)(A).

Ms. O'Sullivan, Mr. Petrocelli, Ms. Boston and Ms. Sloan, may not go beyond their deposition testimony.

Ms. Keenan will also be permitted to testify at trial. Unlike the other nurses, however, Ms. Keenan was never deposed. Her testimony must be limited to the subjects and information provided in her affidavit. However, some of the testimony detailed in Ms. Keenan's affidavit crosses the line into Rule 702 testimony, as Holmes' counsel acknowledged at oral argument. Accordingly, Ms. Keenan will not be permitted to testify regarding the matters described in paragraph 9 of her affidavit.

### C.   Social Worker

Sood argues that Julie McCabe (Sterr), a social worker, should also have been disclosed under Rule 26(a)(2)(A) because her testimony will be based on her experience as a social worker. (Def.'s Second Mot. Lim. at ¶ 17.) Holmes argues that Ms. McCabe is not a medical professional and was not involved in his treatment. (Pl.'s Resp. Second Mot. Lim. at 3.) Holmes asserts that she is a fact witness in this case and was properly disclosed in his 2003 Rule 26(a)(1) disclosures and 2004 interrogatory responses. (*Id.*, Ex. A.) Ms. McCabe was deposed in January 2004. (Pl.'s Resp. Second Mot. Lim. at 3.) Holmes contends that she will not provide any testimony pursuant to Rule 702, but rather will testify regarding what she saw, observed and perceived (essentially lay opinion testimony), and that she communicated her concerns to the prison staff. (*Id.*)

Because Ms. McCabe was disclosed as a fact witness, she may testify regarding facts within her personal knowledge and provide lay opinion testimony pursuant to Rule 701. However, she may not provide any testimony pursuant to Rule 702 based on her training as a social worker.

20

### D. Dr. Franklin

Finally, Sood argues that Dr. Franklin should be barred from relying on Christina Keenan's affidavit in reaching his opinions, because Ms. Keenan was not properly disclosed. (Def.'s Second Mot. Lim. at ¶ 20.) Holmes notes that Sood has provided no legal authority for his argument. (Pl.'s Resp. Second Mot. Lim. at 5.) Pursuant to Fed. R. Evid. 703, an expert may base his opinion on facts or data made known to him, if of a type reasonably relied upon by experts. Sood has not demonstrated a basis for precluding Dr. Franklin from relying on facts set out in Ms. Keenan's affidavit.

### CONCLUSION

For the reasons discussed above, the motions in limine are decided as follows:

1.  Plaintiff's First Motion In Limine to Bar Evidence of Any Conviction Other Than the Conviction For Which He Was Jailed at the Time of His Injuries and To Bar All Evidence of the Nature of the Crime Underlying Any Conviction [dkt 87] is granted in part and moot in part.

2.  Plaintiff's Second Motion In Limine to Bar Reference to Prior Arrests Other Than the Arrest for Which Plaintiff was Jailed in March 2001 [dkt 89] is granted in part and denied in part.

3.  Plaintiff's Third Motion In Limine to Bar All References to Plaintiff's Prior Substance Abuse [dkt 91] is denied.

4.  Plaintiff's Fourth Motion In Limine to Bar Reference to Other Irrelevant and Embarrasing Health Conditions [dkt 93] is withdrawn.

5.  Plaintiff's Fifth Motion In Limine to Bar FRCP 26(a)(2)(B) Testimony from Defendant Dr. Sood [dkt 95] is granted in part and denied in part.

6.  Plaintiff's Sixth Motion In Limine to Bar Reference to the Length or Details of Mr. Holmes' Sentence [dkt 97] is moot.

7.  Defendant's First Motion In Limine Barring Cumulative Expert Witness Testimony [dkt 101] is denied.

21

8.   Defendant's Second Motion In Limine Barring Expert Opinion Testimony Which Has Not Been Disclosed Pursuant to Rule 26(A)(2) and This Court's Standing Order [dkt 102] is granted in part and denied in part.

9.   Defendant's Third Motion In Limine Prohibiting the Display or Publication to the Jury of the Five Photographs Identified As Plaintiff's Exhibit #1 [dkt 103] is denied.

10.  Defendant's Fourth Motion In Limine Prohibiting Any Testimony Regarding Prior or Other Claims [dkt 104] will be addressed in a separate ruling.

IT IS SO ORDERED.

/Geraldine Soat Brown
United States Magistrate Judge

July 11, 2006

22